[No. 2624–2. Division Two. June 27, 1978.]

R. M. HEGEWALD, ET AL, *Respondents,* v. FRANCES NEAL, *as Guardian,* ET AL, *Defendants,* ANDREW ST. MARTIN, ET AL, *Appellants.*

518

*John Gavin* and *Gavin, Robinson, Kendrick, Redman & Mays,* for appellants.

*R. DeWitt Jones,* for respondents.

Soule, J.—Tenancy in common, like marriage, can be an unhappy relationship and the process of dissolution may be prolonged, painful and expensive.

This is a partition action brought pursuant to RCW 7.52.010. The property was originally homesteaded by ancestors of the St. Martins. They now retain a one–fifth interest. The evidence reveals that it is an unusually complex property in its composition. It consists, in part, of a plateau area with some timber of no more than modest commercial value on the west side of the Wind River. The grade is gentle; the area is approximately 140 acres, 126 of which are readily developable for home sites. On the east side of the Wind River there are approximately 65 acres of very steep and hilly land which is not easily accessible nor suitable for development. The balance of the property is located along the Wind River Canyon itself and consists of approximately 35 acres, 14 of which are suitable for building purposes. This latter area contains some old buildings, the former St. Martins Hot Springs Resort. The buildings are of little economic worth. The hot springs themselves arise in the Wind River and have been somewhat developed. All agree that they are an unusual amenity and apparently have substantial value if used in connection with the rest of the land, but not otherwise.

In the course of the action, the court heard extensive evidence and initially ruled that there should be partition in kind. On June 13, 1975, it appointed three referees with directions

> to examine the property in question and make such further investigation as necessary as to the feasibility of physical partition . . . and to submit a plan for such physical partition if the same is possible.

Pursuant to that order, three referees were directed by a letter of instruction to work together on the task assigned by the court, to wit, "whether, and how physical partition may be accomplished . . ." They met together on three occasions in 1975 but did not function effectively as a committee. Referee Lundstrom seems to have been unavailable in 1976. The other two met further in 1976 and filed a report recommending against partition in kind.

A minority report was thereafter filed by Lundstrom urging partition in kind. His report recognizes that the most valuable amenity connected with the land consists of the sources of hot mineral water on the property. That report proposes partitioning the water by collecting it and assigning it through a metering and distribution system, so that it can be shared by the owners of the land in accordance with their percentage of ownership.

The court received the reports of the referees. The St. Martins' interests filed exceptions to the majority report. In substance, the exceptions challenged the validity of the referees' report because the majority report was composed without conference with the third referee. The exceptions further questioned the power of the referees to recommend against partition in kind and the general adequacy of the investigation and consideration given by the referees.

Thereafter, the court scheduled argument but did not order a further evidentiary hearing. At the conclusion of the arguments, the court reversed its initial decision and entered findings based upon the evidence previously received and the report of the two referees. It ordered partition by sale rather than partition in kind. We affirm the order.

The appellants present six assignments of error, but essentially these assignments raise three issues. (1) Whether the court can authorize referees to consider the feasibility of partition in kind. (2) Whether the majority report of the referees recommending against partition in kind is factually and legally sufficient. (3) Whether there is substantial evidence to support the findings and conclusions ultimately entered by the trial court.

*Issue No. 1.* It is the appellants' position that the referees have authority only to devise a method of partition in kind. With this we cannot agree. The order of June 13, 1975, specifically directed the referees to consider the feasibility of physical partition and to submit a plan for such physical partition *if the same is possible,* and the court's written instructions to the referees dated August 13, 1975,

specifically directed them to consider *whether* and how physical partition may be accomplished. The appointment of the referees is authorized by RCW 7.52.080 which provides:

> If it be alleged in the complaint and established by evidence, or if it appear by the evidence without such allegation in the complaint, to the satisfaction of the court, that the property or any part of it, is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale thereof, and for that purpose may appoint one or more referees. Otherwise, upon the requisite proofs being made, it shall decree a partition according to the respective rights of the parties as ascertained by the court, and appoint three referees, therefor, and shall designate the portion to remain undivided for the owners whose interests remain unknown or are not ascertained.

A subsequent section provides for the contingency that although an initial order of partition in kind has been entered, the referees may find, after investigation, that it cannot be accomplished without great prejudice to the owners. RCW 7.52.130 provides:

> If the referees report to the court that the property, of which partition shall have been decreed, or any separate portion thereof is so situated that a partition thereof cannot be made without great prejudice to the owners, and the court is satisfied that such report is correct, it may thereupon by an order direct the referees to sell the property or separate portion thereof.

We hold that this latter statute authorizes the procedure adopted by the court and the referees whereby an initial determination for partition in kind can be reconsidered by the court if the referees report back that partition cannot be made without great prejudice to the owners and the court is satisfied that such report is correct.[1]

---

[1]After the receipt of the referees' report, recommending against partition in kind, and upon exception being taken thereto, it would have been appropriate for the court to conduct a further evidentiary hearing. *Cf. Williamson Inv. Co. v. Williamson*, 96 Wash. 529, 165 P. 385 (1917) and *Hamlin v. Hamlin*, 90 Wash. 467, 156 P. 393 (1916). However, in an examination of the record we have been unable to find that a request for such a hearing was made.

*Issue No. 2.* Was the majority report legally and factually adequate to justify reconsideration by the trial court and the subsequent order of sale?

Resolution of this issue requires an understanding of the physical features of the property previously described and which were disclosed by the evidence received prior to the appointment of the referees, a consideration of the contents of the report in the light of that evidence, and attention to statutory requirements such as they are.

■ The law favors partition in kind whenever practicable. Before a sale can be ordered, in preference to a partition in kind, the court must find by evidence that the property or any part of it is so situated that partition in kind cannot be made without *great prejudice* to the owners. RCW 7.52.080. *Huston v. Swanstrom,* 168 Wash. 627, 13 P.2d 17 (1932); *Williamson Inv. Co. v. Williamson,* 96 Wash. 529, 165 P. 385 (1917). *Williamson* defines *great prejudice* to mean *material pecuniary loss* and the burden of proof is upon the one asserting it. The court's finding of fact No. 10 contains the required finding.[2]

If the referees who are appointed to accomplish a partition in kind report to the court that partition in kind is inappropriate, then RCW 7.52.130 requires that the recommendation must be based on findings that the partition of property in kind, or any separate portion of it, cannot be made without *great prejudice* to the owners and the court must be satisfied that such report is correct.

The majority report of the referees dated April 23, 1976, does not contain the statutory formula wording, "great prejudice to the owners." Rather, after discussion of the problems created by the area and topography of the property, the conditions of the structures, the timber values and the hot springs, it concluded:

---

[2]Finding of fact No. 10 reads:

"That considering the record in this case and all of the evidence presented, the real property is so situated and the circumstances thereof are such that partition thereof in kind cannot be effected without great prejudice to the owners and a sale of the entire property is necessary."

> We feel the partition of the property is not justified for the following reasons: to partition in a fair and equitable manner, all of the acreage should be divided into percentages as related to the parties involved. This would also pertain to the water and furniture and fixtures. *We feel to do this would destroy the usefulness of the property.*

(Italics ours.)

While these words are not phrased in the exact language of the statute, we find them to be substantially equivalent in view of the evidence and case law defining *great prejudice.* This is especially true in view of the fact that the physical partition plan proposed by John Lundstrom, the minority referee, is based on the continued common ownership of the hot springs. Indeed, the minority report, by recommending that the hot springs be retained in common, that cost of improvements be assessed to the owners proportionately, and that the waters be distributed and charged for on a monthly basis, lends support to the conclusion that partition is not feasible.

In *Brown v. Cooper,* 98 Iowa 444, 67 N.W. 378 (1896), the decision of the trial court ordering partition in kind, including a division of a water resource, was reversed. The court said at page 454:

> The object of partition proceedings is to enable those who own property as joint tenants, or co–parceners, or tenants in common to so put an end to the tenancy as to vest in each a sole estate in specific property or an allotment of the lands or tenements. It contemplates an absolute severance of the individual interests of each joint owner, and, after partition, each has the right to enjoy his estate without supervision, let, or hindrance from the other. Unless this can be accomplished, then the joint estate ought to be sold, and the proceeds divided. Courts should be, and are, adverse to any rule which will compel unwilling persons to use their property in common.

In the *Brown* case, the court went on to note that the proposed arrangement for the division of waters was not a partition. The trial judge in the present case made a similar

observation when he stated that the recommendation in the minority report was the very antithesis of partition.

Appellants further contend that the report of the majority of the referees is legally insufficient because they did not meet together and give joint consideration to the problems presented by the land. No authority is cited to support the proposition that the report is legally insufficient for this reason.

■ Of course if a statute specifically requires the referees to meet together, their failure to do so will invalidate their report. *Tolsma v. Tolsma,* 180 Mich. 79, 146 N.W. 412 (1914). In the absence of a statute so requiring, it does not appear that all referees must be present at all times. *Cross v. Cross,* 56 W. Va. 185, 49 S.E. 129 (1904). The partition statute of our state does not specifically require the referees to meet together and we see no reason to invalidate the majority report under the facts disclosed by this record. Apparently all referees met together for preliminary purposes on September 6 and December 28, 1975. Thereafter, referee McEvoy attempted to arrange meetings and gave adequate notice to referee Lundstrom. On at least two occasions, however, referee Lundstrom did not attend nor communicate with the other two.[3] He did eventually file a minority report thereby making his views known to the trial judge. While this procedure is not ideal, we nevertheless believe it legally sufficient absent a statute setting other standards.

Appellants urge that the referees' majority report is insufficient for the reason that it proposes no specific plan of partition in kind. We have heretofore noted that RCW 7.52.130 permits the referees to report that in their opinion such a partition is not feasible even though they are under a primary duty to partition in kind if they can. The majority report discloses that they were familiar with the property. In addition, all referees had been furnished with such

---

[3]In fairness it should be noted that his absence was due to business demands requiring his presence in Texas.

material from the evidentiary hearing as counsel desired them to possess. In light of the evidence already before the trial judge, the reports apparently were usable by him. No standards for factual content are fixed by statute. Although the reports are brief, they adequately disclose the problems of dividing this complex property in kind and note that division will destroy the usefulness of at least some of the features, particularly the water. In our judgment, its factual content is sufficient to warrant its use by the trial judge.

*Issue No. 3.* Appellants assign error to entry of findings of fact Nos. 9[4] and 10 and conclusion of law No. 1.[5]

Based on our review of the record, we are convinced that finding of fact No. 9 adequately characterizes the land as previously described by the witnesses, and is therefore supported by substantial evidence. The thrust of the objection to finding of fact No. 10 is that there is no evidence that partition cannot be effected without great prejudice to the owners.

The record discloses, particularly through the respondents' witness, Jack Jarvis, that the land has three development possibilities. The first is for single–family residences catering to the local housing needs. The second is for a resort oriented to the hot springs. The third is for a combination of the first two, in which case the market for lots would be larger because it would appeal to families

---

[4]Finding of fact No. 9 reads:

"That this property involves a number of different elevations with different valuations assigned to portions of the property. It is unique in that located on one portion of the property, there are hot springs. That it would not be possible to make any practical division and separation of the waters available from the springs and to attempt to do so would force the various persons into an involuntary business relationship which the Court finds would not be justified and would depreciate the value of the individual interests of the existing defendants in this litigation."

Finding of fact No. 10 has been previously set forth.

[5]Conclusion of law No. 1 reads:

"That the described property considering all features touching upon the value of the tract as a single tract cannot be partitioned in kind and should be sold to the highest bidder, or bidders, for cash."

seeking sites for recreational second homes. These families would logically come from the Portland, Oregon, metropolitan area and beyond.

Jarvis testified that if partitioned in kind and used only for residential development, the aggregate value of all of the land would be $200,000. There is further evidence that if kept as one unit, but developed solely for residential purposes, its value would be from 10 to 15 percent higher because of plottage value, the increased value due to unified ownership.

The witness further testified that if the land is partitioned in kind, it cannot be feasibly developed for the logical higher and better use of a resort–recreational development for which purpose he estimated its present market value to be up to $300,000. The same witness suggested substantially higher potential values in the future if the land could be held as a unit but the trial judge declined to consider these higher values because they were not present values. The record thus demonstrates substantial evidence of differences in aggregate value depending on whether the land is partitioned in kind or sold.

In the *Williamson* case, where it was urged that physical division would reduce the aggregate value of the halves by 10 to 30 percent, the court held that this was not sufficient prejudice to justify a sale. That holding, however, was made against the background of evidence of a real estate market so severely depressed that a court–ordered sale probably would have resulted in even greater loss. The factor of a depressed market is absent in this case. We hold that the trial court's finding and conclusion of great prejudice is supported by substantial evidence that this unusual property worth $300,000 would be worth only $200,000 if partitioned in kind and such a difference is properly termed a "substantial pecuniary loss."

The order of the trial court directing a sale is therefore affirmed.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied August 3, 1978.

Review denied by Supreme Court December 14, 1978.