[No. 4874–8–III.   Division Three.   March 22, 1983.]

DONALD E. CARR, *Appellant,* v. ROBERTA L. HARDEN, *Respondent.*

*John E. Bridges* and *Foster, Riesen & Bridges,* for appellant.

*William J. Smith,* for respondent.

MUNSON, J.—In this partition action, the issue is whether RCW 7.52.090[1] requires individual referees to submit written reports showing any disagreement with the referees' majority report. It does not; we affirm.

By stipulation and agreed order, Donald E. Carr and Roberta L. Harden, brother and sister and tenants in common, agreed Mr. Carr is entitled to two–thirds and Mrs. Harden is entitled to one–third of approximately 570 acres of land in Kittitas County. The parties further stipulated

---

[1]RCW 7.52.090:

"In making the partition, the referees shall divide the property, and allot the several portions thereof to the respective parties, quality and quantity relatively considered, according to the respective rights of the parties as determined by the court, designating the several portions by proper landmarks, and may employ a surveyor with the necessary assistants to aid them therein. The referees shall make a report of their proceedings, specifying therein the manner of executing their trust, describing the property divided and the shares allotted to each party, with a particular description of each share."

referees should be appointed pursuant to RCW 7.52.080[2] to either partition the property or find that partition cannot be made without great prejudice and report to the court as required by RCW 7.52.090.

The trial court appointed Mr. Carl Fugitt, Mr. Paul Currit, and Mr. S. W. Shafer as referees. Based on its "highest and best use" for recreation (rather than grazing as it is presently used), the referees' report recommended two different divisions. In the first, Mrs. Harden would take the northern one–half of section 8 and Mr. Carr would take the southern one–half of section 8 and the property located in sections 9 and 16. In the second division, Mr. Carr would take all of section 8 and Mrs. Harden would take the property in sections 9 and 16. The report was prepared on Mr. Currit's letterhead and signed by all three referees.

A confirmation hearing was held and Mr. Fugitt introduced the report. Mr. Carr then testified concerning an Agreement for Land Use Exchange between the Washington State Department of Game (State), Mrs. Harden and him. The agreement basically allowed the State ingress and egress over roads located in section 8 in exchange for grazing rights on State land lying to the west and south of section 8. Mrs. Harden primarily used the State land to graze her cattle. Mr. Carr requested the land in section 8 to run horses. He would continue to allow Mrs. Harden ingress and egress over his property to travel to State land and would also continue to enter into agreements with the State for reciprocal use of the land even though Mrs. Harden primarily benefited from the agreement.

---

[2]RCW 7.52.080:

"If it be alleged in the complaint and established by evidence, or if it appear by the evidence without such allegation in the complaint, to the satisfaction of the court, that the property or any part of it, is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale thereof, and for that purpose may appoint one or more referees. Otherwise, upon the requisite proofs being made, it shall decree a partition according to the respective rights of the parties as ascertained by the court, and appoint three referees, therefor, and shall designate the portion to remain undivided for the owners whose interests remain unknown or are not ascertained."

Mr. Currit testified to different divisions of the property based on its current use for grazing. To him, a major concern was the need to provide equal bargaining power between the parties with the State over grazing land. Although the person with property in sections 9 and 16 could travel to the State land, the owner in section 8 could simply refuse to negotiate with the State and end the agreement. Mr. Currit arrived at these conclusions when doing an independent appraisal for Mrs. Harden prior to his appointment as a referee. He also testified that the referees' reported division was only fair if Mrs. Harden received the northern half of section 8, because then she and Mr. Carr would both control sections of the roadway to facilitate negotiations with the State. He stated he expressed his opinion to the other referees, but it was rejected in an attempt to reach a compromise for the report.

Mr. Shafer then testified he had changed his opinion from that expressed in the report. He now believes that 40 more acres (lot 5) should go to the person taking property in sections 9 and 16 to create a fair and equitable division.

Mrs. Harden testified she had built the corrals and loading chutes in lot 5, the southeastern 40 acres of section 8 to the west of section 9, where she loads and unloads her cattle. She expressed the desire to receive the northern one-half of section 8 or, alternatively, the southern property in sections 9 and 16, plus lot 5 of section 8 to use the corrals. She desired the northern property in order to control the exchange negotiations with the State.

The trial court awarded Mr. Carr all of section 8, minus lot 5 and a 1–acre–wide strip which extended across the southern border of section 8. The trial court awarded Mrs. Harden the property in sections 9 and 16, plus lot 5 and the 1–acre–wide strip across section 8. The trial court stated the referees' report had failed to note the importance of the agreement with the State. The court believed the 1–acre strip to Mrs. Harden would provide each party bargaining power with the State and yet "still provide a viable parti-

tion of the property that the parties can live with."

Mr. Carr appealed. His sole contention on appeal is the partition statutes require each referee who disagrees with the majority report to file a separate report so that exceptions to it can be made prior to trial. Mr. Carr cites to no authority for this position.

There are two basic statutory approaches to the use and reliance to be placed on referees' reports. 68 C.J.S. *Partition* § 159, at 266 (1950); 59 Am. Jur. 2d *Partition* § 116, at 860 (1971). In one, the referees or commissioners submit the report which has the effect of a jury verdict. *Morse v. Morse,* 150 Me. 174, 107 A.2d 496 (1954) (a commissioner's report may be set aside for irregularity, but it may not be altered); *Stannard v. Sperry,* 56 Conn. 541, 16 A. 261 (1889) (a partition committee's finding of equal division has the force of a jury verdict and cannot be revised except for irregularity). In the other, the report is viewed as an aid to the court, but the court is not bound by it. *Forest Park Properties, Inc. v. Pine,* 9 Ohio App. 2d 348, 224 N.E.2d 763 (1966) (two of the three commissioners submitted a report; extensive testimony was taken from all three by the trial court); *Taylor v. Farmers & Gardeners Mkt. Ass'n,* 295 Ky. 126, 173 S.W.2d 803 (1943) (a commissioner's duty is ministerial; his recommendations are subject to review upon proper exception); *McLamb v. Weaver,* 244 N.C. 432, 94 S.E.2d 331 (1956) (commissioner's duty is ministerial and ends with submission of the full report). *See VanHook v. VanHook,* 270 Ark. 27, 603 S.W.2d 434 (Ct. App. 1980) (the report was made, the commissioners testified, and the trial court modified the division).

The Washington statutes adopt the second approach: "The court may confirm or set aside the report in whole or in part, . . ." RCW 7.52.100. The report is for the use of the court to aid in the exercise of its discretion. *Hegewald v. Neal,* 20 Wn. App. 517, 582 P.2d 529 (1978). In the court's research, the one fact that remained constant is that only one report, joined by at least two of the three referees, must be filed. Sometimes, however, a minority

report is filed. *See, e.g., Hegewald v. Neal, supra; Robbins v. Hobart,* 133 Minn. 49, 157 N.W. 908 (1916).

Mr. Carr contends the "trust" requirement in RCW 7.52-.090 creates a fiduciary responsibility in referees to file a separate report. To the contrary, the entire thrust of the authorities indicates only one report is contemplated. To carry out their "trust" means to do as the court requested. *Robbins v. Hobart, supra.* The authorities make it clear that the report is to be considered highly authoritative and to set the direction for the court. 68 C.J.S. *Partition* § 159, at 266 (1950); 59 Am. Jur. 2d *Partition* § 116, at 860 (1971).

Since the report is only to aid the court, the focus then is on whether Mr. Carr was able to fairly apprise the court of his position. Here, the three referees expressed their individual opinions as did both parties. A referee is not estopped because he signed the report from testifying that a division is unfair or inequitable. *Cox v. Moore,* 142 Ga. 487, 83 S.E. 115 (1914); 68 C.J.S. *Partition* § 161, at 271 (1950). *See Smith v. Norton,* 206 Okla. 422, 243 P.2d 980 (1952). Because a full hearing was held in which Mr. Carr was able to fully apprise the court of his position, there is no prejudice merely because minority reports were not filed.

Mr. Carr finally contends RCW 7.52.200[3] allows for exceptions. To him, this is necessary so parties will not be surprised at trial. First, there is no indication Mr. Carr was unable to meet with each referee prior to the hearing to discuss his testimony. Second, this section is taken out of context. A review of the statutory scheme and language of this section indicates it is meant to have effect only when

---

[3]RCW 7.52.200:

"The report of the referee may be excepted to by either party to the suit, or to the proceedings before the referee, in like manner and with like effect as in ordinary cases. If a lien creditor be absent from the state, or his residence therein be unknown, and that fact appear by affidavit, the court or judge thereof may by order direct that service of the notice may be made upon his agent or attorney of record, or by publication thereof, for such time and in such manner as the order may prescribe."

298

the property is ordered sold and a *referee* (not referees; *see* RCW 7.52.080) is attempting to find all creditors. It does not apply to in–kind partition proceedings. *See Roper v. Bartholomew,* 30 Utah 2d 386, 518 P.2d 683 (1974).

We hold the statute requires only one referees' report. Minority reports and exceptions prior to trial are unnecessary, although their submission is encouraged to aid the trier of fact. The hearing procedure and partition are affirmed.

ROE, C.J., and McINTURFF, J., concur.