IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STEVE HEITSTUMAN, | ) | No. 31671-8-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WAYNE HEITSTUMAN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| WAYNE HEITSTUMAN and BECKY | ) | UNPUBLISHED OPINION |
| HEITSTUMEN, husband and wife, and | ) | |
| DAVID HEITSTUMAN and TRACIE | ) | |
| HEITSTUMAN, husband and wife, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVE HEITSTUMAN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Steve Heitstuman appeals a decree partitioning real and personal property held in common with his brothers, Wayne and David Heitstuman. He contends the trial court lacked jurisdiction under chapter 7.52 RCW to divide the

brothers' farm equipment and erred in failing to appoint referees to partition the real

property. He also contends the court erred in failing to account for his capital

contributions to the property and in failing to consider the relative "quality and quantity"

of the property under RCW 7.52.090. Finding no error, we affirm.

## FACTS

Three brothers, Steve Heitstuman,[1] Wayne Heitstuman, and David Heitstuman

(Heitstuman Brothers), jointly purchased three properties in Asotin County known as the

Floch property, the Hendrickson property, and the Barkley property in 1979, 1980, and

1981, respectively. The parties agree that they own the property as tenants in common

and have an undivided one-third ownership interest. The Floch property consists of both

farmland and rangeland, as does the Barkley property. The Hendrickson property is

accessible only through the Floch property and consists solely of rangeland. Wayne and

his wife, Becky Heitstuman, have lived on the Floch property since 1985. David and his

wife, Tracie Heitstuman, live a couple of miles from the Floch property. David is

primarily responsible for the farming operation that occurs on the Floch property. Steve

has lived on the Barkley property for 27 years and, at the time of trial, had cattle on the

property. Steve Rynearson, a certified appraiser, concluded that the total value of the

---

[1] Since all parties have the same last name, first names will be used for

properties was $1,974,800. The appraisal also concluded that the Floch and Hendrickson properties were worth a combined total of $1,328,000 and the Barkley property was worth $646,800.

After a disagreement between Steve and Wayne in October 2003, Steve filed a suit against Wayne in January 2005, alleging that Wayne breached the parties' contract by misappropriating Steve's cattle. Specifically, he alleged that Wayne took 85 of Steve's calves with a value of about $51,000 and that in previous years, Wayne had taken cows and bulls valued at about $67,000. Steve also claimed that Wayne breached the parties' contract by precluding him from using the Floch property to graze cows and by failing to pay Steve's one-third share from the sale of the 2004 barley crop. He sought damages of approximately $145,000.

In 2006, Wayne filed a counterclaim for an equitable partition of the brothers' real property under chapter 7.52 RCW. David and his wife and Wayne's wife joined in the counterclaim. The counterclaim noted that the "partners of Heitstuman Brothers Partnership do not have current, accurate partnership accounting" and requested the appointment of an accountant to determine partnership capital and income accounts. Clerk's Papers (CP) at 25.

---

clarification.

In April 2012, Steve moved for summary judgment and a final order regarding Steve's capital contributions to the properties. He noted that "[e]ach party's capital contributions to the partnership cannot be reconstructed using generally accepted accounting principles because the partnership's records are insufficient to allow a forensic audit." CP at 38. Steve asserted that the partnership's expenses had been "commingled with each party's personal business and David and Wayne's separate businesses." CP at 38. However, he maintained that there was evidence of the parties' capital contributions to the partnership, and he produced checks and other documents showing his capital contributions in the amount of approximately $642,000. Steve claimed there was no genuine issue of fact regarding this amount and was, therefore, entitled to judgment as a matter of law.

Wayne responded that the motion should be denied because there was a dispute about Steve's accounting. He noted that although Steve could produce checks from his personal account that went to Heitstuman Brothers expenses, there was "no reliable way of knowing how [Steve's] personal account was funded." CP at 100 (emphasis in original. He pointed out that if Steve's personal account was funded through the partnership, then his payments from his personal accounts would not constitute capital contributions.

4

The trial court denied Steve's motion for summary judgment. Steve then answered Wayne's counterclaim, admitting that it was not possible to determine each partner's capital contributions and asked that the parties account to each other. He requested that the partnership property be partitioned by sale and the proceeds divided according to each partner's capital account. Steve claimed that he was entitled to more than one-third of the Heitstuman Brothers' property based on his greater capital contributions. He asked the court to award him the partnership assets and allow him to buy out the remaining partners.

The court concluded that chapter 7.52 RCW provided the appropriate legal framework for dividing the property and awarded the brothers an equal one-third share of the total value of the real property. It concluded that physical partition was the most economical means of dividing the property and awarded the Barkley property to Steve, which was approximately one-third the total value of the properties. The court also awarded Steve an equalization payment of $11,467. The court awarded the Floch and Hendrickson properties to Wayne and David.

The trial court denied Steve's motion for reconsideration on the partition issue. It also denied his motion for a new trial and to amend the judgment. Steve appeals.

ANALYSIS

*Jurisdiction Under Chapter 7.52 RCW to Partition Personal Property.* We first address whether the trial court erred in partitioning personal property along with the real property under chapter 7.52 RCW. The trial court concluded, "Partition under RCW 7.52 provides the appropriate legal framework for dividing the property, rather than the Revised Uniform Partnership Act, RCW 25.05." CP at 147. Steve contends that the trial court lacked authority under chapter 7.52 RCW to partition the farm equipment because the statute is limited to actions to partition "real property," not personal property. He maintains that if the legislature had intended for chapter 7.52 RCW to apply to personal property, it would have explicitly stated so. Wayne argues that Steve is judicially estopped from making this argument on appeal because he inconsistently maintained below that the court had jurisdiction to divide both the real and personal property "regardless of the cause of action asserted." CP at 267.

"'Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13

(2007) (quoting *Bartley-Williams v. Kendall*, 134 Wn. App. 95, 98, 138 P.3d 1103

(2006)). One of the factors in evaluating a judicial estoppel claim is whether a party's

later position is clearly inconsistent with its earlier position. *Miller v. Campbell*, 164

Wn.2d 529, 539, 192 P.3d 352 (2008) (quoting *Arkison*, 160 Wn.2d at 538-39). At trial,

Steve asked the court to apply chapter 25.05 RCW to dissolve the partnership, rather than

to partition the property under chapter 7.52 RCW. As such, his position on appeal is not

inconsistent with his position at trial. Therefore, judicial estoppel does not apply.

Questions of subject matter jurisdiction may be raised for the first time at any point

in a proceeding, even on appeal. *Kelsey v. Kelsey*, 179 Wn. App. 360, 368, 317 P.3d

1096 (2014) (citing *Cole v. Harveyland, LLC*, 163 Wn. App. 199, 205-06, 258 P.3d 70

(2011)), *review denied*, 180 Wn.2d 1017 (2014). "We review de novo questions of a

court's subject matter jurisdiction." *Id.*

RCW 7.52.010 states, "When several persons hold and are in possession of real

property as tenants in common, in which one or more of them have an estate of

inheritance, or for life or years, an action may be maintained by one or more of such

persons, for a partition thereof." In *Kelsey*, this court recently addressed the issue of

whether chapter 7.52 RCW applies to the division of personal property. In that case, one

of the issues was whether the trial court had jurisdiction to divide farm equipment along

7

with farmland under chapter 7.52 RCW. In holding that chapter 7.52 RCW does not bar a partition action for personal property, we reasoned that the statute provides guidance to a court in a partition action, but "does not mark the outer limits of a court's exercise of its equitable powers." *Kelsey*, 179 Wn. App. at 368. We further noted these equitable powers allow a court to "fashion remedies to address the particular facts of each case, even if the partition statute does not strictly provide for such a remedy." *Id.* at 369. Accordingly, we conclude that the court had jurisdiction to divide the farm equipment in this case.

Steve next contends that even if partition under chapter 7.52 RCW was proper, the trial court's division of the farm equipment was prejudicial. The trial court concluded:

> The jointly-owned farming equipment should be divided with Wayne Heitstuman and David Heitstuman, jointly, purchasing Steve Heitstuman's share of said equipment by paying Steve Heitstuman a total of $8,333 within 60 days after the entry of this Order. However, if any of the equipment is currently in the possession of Steve Heitstuman and ordinarily used by him, he shall have the option of retaining said equipment with the agreed market value thereof being deducted from his share. The court should retain jurisdiction for the limited purpose of resolving any disputes relating to the final division of the equipment.

CP at 148.

8

Steve contends that this division is unfair because over 90 percent of the real property awarded to him is farmland, which will require that he replace the farm equipment. While he does not dispute that the total value of the farm equipment is $25,000, he maintains that the replacement cost of his share of the equipment will substantially exceed $8,333.

A partition action is a flexible equitable remedy subject to broad discretion. *Friend v. Friend*, 92 Wn. App. 799, 803, 964 P.2d 1219 (1998). Steve's argument overlooks the fact that the property awarded to Wayne and David also contains hundreds of acres of farmland, and David has been primarily responsible for the farming operation. Thus, the court's division of the farm equipment was based on specific evidence in the record. The fact that Steve cannot replace all of the equipment for $8,333 does not make the partition inequitable. The court divided the equipment equally in three shares and gave Steve the option of retaining any equipment in his possession and used by him. This was well within its discretion.

The court had jurisdiction to divide the farm equipment under chapter 7.52 RCW.

*Appointment of Referees under RCW 7.52.080.* Steve next contends that the trial court misinterpreted RCW 7.52.080 by dividing the real property in three equal shares without appointing referees to partition the land. He claims RCW 7.52.080 imposes a

mandatory duty upon the court to appoint referees and that he "had a procedural due process right under RCW 7.52.080 to have referees appointed." Br. of Appellant at 16. He contends that under the statute, referees are charged with dividing property, not the court.

Initially, we note that Steve cites no authority in support of his due process argument and the argument was not raised below. Assignments of error unsupported by argument will not be considered on appeal. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Also, an appellate court may refuse to review any claim of error that was not raised in the trial court. RAP 2.5(a). Thus, we are not required to address his claim.

Nevertheless, even if we address the merits of his argument, it fails. RCW 7.52.080 provides, "upon the requisite proofs being made, [the court] shall decree a partition according to the respective rights of the parties as ascertained by the court, and appoint three referees, therefor." In discussing the court's partition powers under chapter 7.52 RCW, Division One of this court has stated that "[t]he court *may* appoint three

10

referees to determine the rights of the owners," implying such appointment is discretionary. *Carson v. Willstadter*, 65 Wn. App. 880, 883, 830 P.2d 676 (1992) (emphasis added). This discretionary power to appoint referees is consistent with the court's flexibility in dividing property under chapter 7.52 RCW. Significantly, the court is not bound by the referees' report. RCW 7.52.100 provides: "[t]he court may confirm or set aside the [referees'] report in whole or in part." The purpose of appointment of referees is simply to prepare a report to aid the court in determining the relative value, quality, and quantity of the land. *Carr v. Harden*, 34 Wn. App. 292, 296, 660 P.2d 1139 (1983) (citing *Hegewald v. Neal*, 20 Wn. App. 517, 582 P.2d 529 (1978)). Thus, appointment of referees is a discretionary decision of the court.

Steve's argument on appeal ignores the fact that he did not ask for the appointment of referees at trial. Instead, he relied on Mr. Rynearson's appraisal and proposed that the court award him the Barkley and Campbell properties, which had separate legal descriptions, rendering the assistance of referees unnecessary. The parties stipulated to the use of an appraiser and Steve called Mr. Rynearson as a witness and offered his report into evidence. Mr. Rynearson offered his expert testimony and the court relied on it in making findings as to the value of the land. In any event, while chapter 7.52 RCW does not define a "referee," a certified appraiser jointly hired by the parties to prepare a

11

comprehensive report regarding the values of the several properties would seem to be the functional equivalent. *See* RCW 7.52.090 (providing that the referees shall consider the "quality and quantity" of the property, hire a surveyor, if needed, and describe the property).

Nevertheless, in his reply, Steve contends, "[t]he fact that the parties agreed to use Steve Rynearson's appraisal is not an agreement to forego the proper procedures for partition set forth in RCW 7.52.080." Appellant's Reply Br. at 7. But Steve does not explain how the court's failure to appoint referees specifically prejudiced him. Because a full hearing was held in which Steve was able to fully apprise the court of his position, the absence of referees did not prejudice him. He fails to identify what additional evidence was needed. Ultimately, Steve's argument overlooks the broad discretion and flexibility accorded to courts in partition actions. A case from another jurisdiction supports our reasoning, noting, "[a] court of equity has broad powers and comparatively unlimited discretion to do equity *without being bound by any strict rules of procedure.*" *Richmond v. Dofflemyer*, 105 Cal. App. 3d 745, 766, 164 Cal. Rptr. 727 (1980) (emphasis added). We conclude the court had the power to accept the parties' stipulation to use Mr. Rynearson's appraisal in lieu of a referees' report.

12

Under RCW 7.52.080, the court may appoint referees to aid its determination of the rights of the owners, but is not required to do so.

*Partitioning with Respect to Capital Accounts.* Steve next contends that the court erred in its partition of the property by failing to account for his extra payments to the Heitstuman Brothers' property expenses. He claims the court misinterpreted RCW 7.52.090 to require a formal capital accounting for the extra payments he made to Heitstuman Brothers, which he claims include $19,000 for the down payment on the Hendrickson property, $109,215 to get the Barkley property out of bankruptcy, and the entire Floch mortgage debt payment from 1998 to 2002. He maintains that "no law requires a formal capital accounting, and denying a party's right to recovery in the absence of a formal accounting gives junior interest-holders a windfall." Br. of Appellant at 19. According to Steve, if the court had properly interpreted the term "respective right," it would have awarded him a one-third interest in the property plus two-thirds of the extra payments he made beyond his one-third share for the Heitstuman Brother's expenses.

As noted, partition is an equitable action subject to judicial discretion. *Friend*, 92 Wn. App. at 803. Again, the court has great flexibility in fashioning relief for the parties. *Kelsey*, 179 Wn. App. at 369. Partition may occur "according to the respective rights of

13

the persons interested therein." RCW 7.52.010.

Steve's argument that he deserves a significantly larger share of the property based on his capital contributions to the property was properly rejected by the court. As Wayne points out, Steve's accounting shows only expenses without accurately accounting for reimbursements. Wayne pointed this out at trial through the admission of Exhibit D-517, which showed large checks that were unaccounted for. For example, the exhibit shows a check for $90,801.26. During cross-examination, defense counsel questioned Steve about that check:

> Q. Do you see a check—check number 5028 for $90,801?
> A. Yes.
> Q. What's the date of that?
> A. Ah, October 27th.
> Q. And that's about four days, maybe five days before you wrote a check for the Barkley payment; correct?
> A. Yes.
> Q. *Is it possible that that check is to you to cover these payments?*
> A. It's possible it is.

Report of Proceedings (RP) at 264 (emphasis added).

Moreover, Steve's claim that he paid the entire Floch mortgage payment from 1998 to 2002 is undermined by the court's unchallenged findings that Wayne raised Steve's cows during that time period and Wayne made the Floch mortgage payment through the sale of his and Steve's cows. In exchange, Steve received the Heitstuman

14

Brothers' farming income and made the annual payments for the Barkley property. Thus, contrary to his claim, Steve did not make the Floch payment, it was the combined sale of his and Wayne's cows that made the payment, and Steve was reimbursed by receiving all of the farming income.

Exhibit D-521 also undermines Steve's position. This exhibit is a summary of the income received by the Heitstuman Brothers minus the expenses that were paid by Steve. Steve was questioned extensively about this document and did not dispute its accuracy. Assuming the exhibit is accurate, it reveals that between 1998 and 2002, Steve would have netted, after making the listed payments, $442,000. Thus, the record shows that Steve received reimbursement for his payments. Moreover, Wayne and David submitted Exhibit D-503, the tax returns of the Heitstuman Brothers from 1990 to 2004, which showed that all partners had equal capital accounts.

Steve assigns error to the court's finding that "[a]ll parties agree that capital accounts for either the cattle partnership or for the Heitstuman Brothers partnership cannot be accurately reconstructed." CP at 142, Finding of Fact 15. However, his contention ignores the fact that he previously agreed that the parties' capital accounts could not be accurately reconstructed. In the end, the court found Wayne's evidence more persuasive than Steve's. The trial court's reliance on the testimony and evidence of

one party over another's is a credibility determination we do not disturb on appeal. *In re Marriage of Rich*, 80 Wn. App. 252, 259, 907 P.2d 1234 (1996). The court reviewed and considered Steve's extensive documentation of his payments, reviewed the other exhibits, considered the testimony of the parties and other witnesses at trial, and concluded that an equal division of the property was proper.

The trial court did not abuse its discretion in equally dividing the property between the parties.

*Partitioning with Respect to Land Values.* Finally, Steve contends that the court misapplied RCW 7.52.090 by partitioning the land without considering the quantity or quality of the land. Specifically, he argues that he was awarded only 840 acres, while Wayne and David were awarded 4,776 acres. He also contends that "the relative qualities of the partition were also drastically lopsided in favor of Wayne and David." Br. of Appellant at 21. He complains that Wayne and David were awarded 60 percent of the farmland, while Steve, who does not farm, was awarded 40 percent of the farmland. He also points out that Wayne and David were awarded 3,661.48 acres of the rangeland, while Steve, who is also a cattle rancher, was awarded only 79.29 acres of the rangeland.

At trial, Steve called Mr. Rynearson, who had appraised the subject properties, to testify on his behalf. Steve also offered Mr. Rynearson's appraisal concerning the

16

properties at issue. The appraisal concluded that the Floch and Hendrickson properties were worth a combined total of $1,328,000. Mr. Rynearson also estimated the value of the Barkley place to be $646,800, about one-third of the value of the total properties.

The court considered these values as well as the fact that Steve had lived on the Barkley property for 27 years and has cattle on that property. Although the court awarded Steve 840 acres, and Wayne and David were awarded a combined 4,776 acres, Steve's acreage contains a higher percentage of farmland relative to rangeland. Farmland is more valuable than rangeland, and so the land awarded to Steve is more valuable on a per acre property basis than the land awarded to Wayne and David. Steve contends that the division is inequitable because he is a cattle rancher, but he ignores the fact that Wayne is also a cattle rancher. These types of decisions are squarely within the discretion of the trial court.

The court's findings mirror the undisputed values listed in Mr. Rynearson's appraisal of the properties, the testimony of the parties, as well as the exhibits. The findings are supported by substantial evidence, and in turn, support the court's decision.

The trial court's partition of the property was well within its broad equitable discretion under chapter 7.52 RCW.

17

No. 31671-8-III
*Heitstuman v. Heitstuman*

We affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Brown, A.C.J.

Fearing, J.