[No. 30484.   Department One.   August 3, 1948.]

Troy Woodard *et al., Respondents,* v. Ada Gooley Carpenter, *Appellant.*[1]

*John M. Warnock* and *Michael R. Donovan,* for appellant.

*Parker Williams,* for respondents.

Simpson, J.—This action was instituted by plaintiffs for the purpose of quieting title to real property, and to recover rent claimed to be due for the use of the property. From judgment in favor of plaintiffs, defendant Ada Carpenter has appealed to this court.

The essential facts to be noted may be summarized as follows:  June 4, 1938, respondent Margaret Woodard married Reginald Carpenter, the son of appellant. Mr. Carpenter died August 3, 1939. May 3, 1942, Margaret married respondent Troy Woodard. Troy Woodard was inducted

[1] Reported in 195 P. (2d) 983.

into the armed service of the United States May 3, 1941, and was discharged October 29, 1945.

In August, 1933, appellant and her son Reginald acquired lots 7 and 8 in block 331, of the plat of Everett, division X, and lots 11, 12, 13, and 14 in block 331 of the plat of Everett, division X, all in the city of Everett, Washington. Prior to 1937, the city of Everett caused to be formed local improvement district No. 516. The district included lots 7 and 8 of division X. The improvement was completed, and the property included in the district was assessed for the cost thereof. At all times thereafter, the names appearing upon the assessment rolls were Ada Carpenter and Reginald Carpenter.

May 8, 1941, appellant filed an action against Margaret Carpenter, asking that the property above described be partitioned. October 4, 1941, the superior court made and entered its decree of partition, in which appellant was awarded lots 11, 12, 13, and 14, of block 331, and Margaret Carpenter was given lots 7 and 8, of block 331. The first-described property was located at 1621 and 1625 Fulton street, and the property last described was located at 1613 Baker street. The properties, however, were joined.

Respondents remained in Everett during the summer of 1942. They then went to Florida and remained away from Everett until Mr. Woodard was discharged, except that Mrs. Woodard spent some three months at home during the latter part of 1943. She testified that she did not know of the local improvement district assessments until the day after Thanksgiving, 1945, at which time she was notified that the home did not belong to her but had been sold to appellant at a tax sale.

The local improvement district installments for 1937, 1938, and 1939, were paid by appellant. Installments for 1940 and 1941 became due September 9, 1940, and September 9, 1941. This was during the period of time when appellant and respondent Margaret Woodard were tenants in common. The fourth and fifth installments became delinquent. Action of foreclosure was instituted and concluded by the city, and the property sold to appellant. The city

treasurer of the city of Everett caused notices to be mailed of intention to foreclose upon the delinquent assessments on the thirty-first day of August, 1942. These and all other notices were mailed by the treasurer of Everett to appellant. In regard to the activities of appellant, Charles R. Dobler, the treasurer of the city of Everett, testified:

"Q. And do you remember Mrs. Carpenter ever coming to you in 1943 and stating that she wanted to purchase this property? A. No, I do not. She came to me, but she said that she had seen—we had published on July 16 and 23 a notice of sale, foreclosure sale. She said she had seen her name in the paper on that sale, and I got out the foreclosure and she says, 'You know, I don't own that property.' I says, 'No, I didn't know that.' So I asked her who owned it. She said her former daughter-in-law owned it. I asked her what her name was, and she said she had recently been married, subsequently been married—she didn't know exactly what her name was—and I asked her where she lived. She said she married a service man and she was in Texas, but she heard that they had moved; she didn't know where."

The vital question in this case is: May a former co-owner of real property acquire title as against her former co-owner to the property, by purchasing at a local improvement district tax foreclosure sale, where the action of foreclosure was prosecuted for the purpose of collecting the delinquent tax that was due at a time when the property was owned in common? It is our opinion that, under the circumstances present in this case, the title was invalid.

■ Cotenants are in duty bound to keep the property free from encumbrances. This, of course, is not a personal liability, but it is one attached to real property ownership. Certainly, an individual cannot be allowed to take advantage of his or her own wrong or neglect and profit thereby. 2 Walsh, Commentaries on the Law of Real Property, 77, § 132.

■ The rule to be applied was well stated by the trial court on pp. 144 and 145 of the statement of facts, in the following language:

"I believe this case calls for the application of this equitable principle, that is, that Mrs. Carpenter, by her failure

to pay these assessments at a time when she was obligated to do so, and at a time when Mrs. Carpenter knew of such assessments and Margaret Woodard did not know about them, and under the circumstance that after the cessation or end of this relationship of co-tenancy or co-ownership Mrs. Carpenter failed and refused to forward these notices of delinquency and of foreclosure to Margaret Woodard, whom she knew was the then owner of the property and to whom she had previously borne a trust relationship, and whose address she easily could have found or whose whereabouts she could have easily obtained, is estopped and cannot be permitted to acquire tax title because of her own act.

". . . Surely, for instance, a trustee who held property in trust for another could not fail to pay the taxes, then resign as trustee, and then a few years later go in and buy the trust property at a tax title sale when it was the trustee's own act in failing to pay taxes in years before which resulted in the foreclosure. Neither side has cited me any case which has held that the simple cessation of the relationship or obligation to pay the taxes permits such person to buy the property at a tax sale if such tax sale is brought about by the previous action of the party in failing to pay the taxes when obligated to do so. Mrs. Woodard and Mrs. Carpenter got title from a common source. They owned it together. They were obligated to pay the taxes on behalf of the other, and if they did, it is presumed they did so for both of them. By the same token the failure of one of them to do it cannot be used to the benefit of the other in later years in securing tax title because of the failure of such one to pay the taxes. Whether you want to call it a trust or what legal fiction the law may bring into existence to cover the situation, this court is of the opinion that the broad equitable principle mentioned prevents Mrs. Carpenter from buying in to the prejudice of Mrs. Woodard."

The facts in *Maul v. Rider*, 51 Pa. St. 377, are similar to those in the instant case. The court in passing upon the question arising from those facts stated:

"Passing now to the second ground of defence, and assuming still that the jury found a parol partition executed, we have to consider the effect of the tax sale. It was a sale of the whole three hundred acres assessed to Rider and Jacobs in 1838. Probably the assessment was made in the fall of 1837, while they were confessedly tenants in com-

mon. The sale was made December 14th 1840, to John Philliber, who, on the 9th May 1842 assigned his deed to Rider for the consideration of $15.40. Had Rider and Jacobs continued tenants in common, this transaction could be called nothing more than a redemption. Rider could have obtained by it no advantage over his co-tenant. It would not even have converted him into a trustee for his co-tenant. The outstanding right was called in within the period allowed for redemption. But if when the land was sold the parties had become one the owner of the east end in severalty, and the other the sole owner of the west end, the effect of the transaction might be different, and it clearly would be, if the taxes for which the land was sold had been assessed after the tenancy in common had ceased. There would then have been nothing to prevent either of the parties from buying the land of the other, exclusively for his own use. This case differs, however, from the one supposed. The taxes were assessed while Rider and Jacobs were joint owners. They were a burden upon the whole three hundred acres. It was as much Rider's duty and interest to pay them as it was the duty and interest of Jacobs. And when the land was sold, recovering the title was essential to the preservation of Rider's interest. It was a redemption of his own land then held in severalty. I do not think it can be regarded as anything more, certainly not an acquisition of the title to the east end of the property—not even the acquisition of a trust for Jacobs. It was simple redemption of his own parcel; and consequently of the parcel of Jacobs. There is nothing then in the tax sale to divest the title of the plaintiff to the east end, if it be assumed that partition was made."

We adhere to the principle as stated by the court. Appellant was estopped by her actions in not paying the tax when due, and in buying the land without giving notice to her former co-owner that the land was to be sold for taxes that were due and owing at the time the land was owned in common.

Appellant argues that estoppel will not lie in this case because it was not pleaded. However, that rule cannot apply here because the evidence relative to the estoppel was introduced without objection by appellant. In such cases, it is not necessary to plead estoppel. *Beaulaurier v.*

*Washington State Hop Producers*, 8 Wn. (2d) 79, 111 P. (2d) 559.

The judgment of the trial court is correct and is therefore affirmed.

MILLARD, BEALS, and HILL, JJ., concur.

SCHWELLENBACH, J. (concurring)—I do not believe that, under the circumstances in this case, appellant was under any obligation, because of the former relationship of the tenancy in common, to pay respondent's assessments in order to save a foreclosure of the property. If, after the foreclosure decree, the property had been purchased in good faith by an innocent third person, appellant would not have been compelled to respond in damages to respondent. Appellant owed respondent no duty to protect her interests.

*But*, because of the former relationship of tenancy in common, coupled with the fact that the notice to foreclose respondent's property was, in respondent's absence, mailed to appellant, *she, appellant*, could not purchase this property after foreclosure. She was estopped from gaining any advantage to *herself* because of this situation.