# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| OVERLAKE FARMS B.L.K. III, LLC, a Washington limited liability company, | ) ) ) | No. 73408-3-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| BELLEVUE-OVERLAKE FARM, LLC, a Washington limited liability company, | ) ) ) | |
| Respondent. | ) ) | FILED: December 5, 2016 |

TRICKEY, A.C.J. — Two related families, the Kapelas and the Sferras, own a large undeveloped property in Bellevue, Washington as tenants in common. The Kapelas, who had sought to partition the property in kind, appeal from the trial court's order to partition by sale.

Unless a partition in kind will cause great prejudice to the owners, the court may not order a partition by sale. Because the trial court ordered a partition by sale based on prejudice to one owner, not the *owners*, we reverse.

## FACTS

Army and Betty Seijas purchased a 60-acre farm in Bellevue in 1947. The Seijases had two daughters, Betty Lou Seijas Kapela and Gloria Seijas Sferra. The Seijases deeded 20 acres of the farm to their daughter, Betty Lou Seijas Kapela. They also gave each of their daughters a 25 percent interest in the remaining 40 acres.[1] Betty Lou Seijas Kapela inherited her parents' remaining 50 percent interest in the 40 acres after her mother's death. The 40-acre farm is the

---

[1] The property is actually 39.25 acres.

subject of this appeal.

Currently, two limited liability companies share ownership of the 40-acre farm (the property). Overlake Farms B.L.K. III, LLC, which is beneficially owned by Betty Lou Seijas Kapela's descendants, owns a 75 percent interest in the 40-acre farm. Bellevue-Overlake Farm, LLC, whose members are Gloria Seijas Sferra's descendants, holds the remaining 25 percent interest. For clarity, we adopt the parties' convention of referring to Overlake Farms B.L.K. III, LLC as the Kapelas, and Bellevue-Overlake Farm, LLC as the Sferras.

The property lies in the Bridle Trails area of Bellevue. The Kapelas board horses on their 20-acre farm and use the property for grazing. They also operate a summer camp on the property. The property is zoned for private residences, and both parties agree that the highest and best use of the property is residential subdivision.

There is currently no sewer serving the property. Extending the sewer to the property would cost approximately $1.4 million. It may be possible, as an alternative, to develop the property with on-site septic systems. Installing septic systems would cost substantially less than extending the sewer but would require the city of Bellevue's approval. Even if the city would grant a variance authorizing on-site septic systems, the use of septic systems instead of connecting to sewer could lessen the value of the property.

In 2011, the Kapelas filed an action to partition the property. They sought partition in kind. The Sferras counterclaimed, requesting a partition by sale.

In early 2013, the case proceeded to a bench trial. The court ruled that the

Sferras had not shown that a partition in kind would create great prejudice. The trial court appointed three referees to report on how to partition the property in kind, or to state that, "partition cannot be made without great prejudice to one or both [p]arties."[2]

The parties agreed that the property would yield 38 lots. The referees determined that, if the court ordered a partition in kind, the most reasonable approach would be to award the Sferras a parcel of land capable of subdivision into nine lots plus an owelty payment equivalent to the value of one-half lot. The court would award the remaining land, capable of subdivision into 29 lots, to the Kapelas. The referees concluded there was "little difference, if any, between the value of a nine-lot short plat and the first nine-lot phase of a broader subdivision of the entire [p]roperty."[3]

But the referees also concluded that connecting to the sewer was required. They determined that, unless the parties entered into a cost-sharing agreement, whichever property developed first would bear the entire cost of extending the sewer. They assumed the smaller parcel would develop first because the Kapelas expressed no current interest in developing their land. The referees concluded that imposing the entire cost of the sewer extension on the smaller parcel would result in great prejudice to the Sferras.

In their draft report, the referees outlined provisions of a covenant to share the cost of the sewer development. They solicited responses from the parties to their proposed covenants. But, after receiving the parties' responses, they were

---

[2] Clerk's Papers (CP) at 241.
[3] CP at 940.

3

"not persuaded that a combination of owelty and a mandatory agreement between uncooperative parties can or should play a role in addressing the issue of great prejudice."[4]

Accordingly, in their final report, they recommended a partition by sale if the parties could not come to an agreement about the sewer covenant. The Kapelas agreed to pay for their share of the sewer extension, "if it were necessary to develop any portion of the [p]roperty."[5] The Kapelas moved to confirm in part and set aside in part the referees' recommendation. The trial court affirmed the referees' recommendation in all respects relevant to this appeal and ordered the sale of the property. The Kapelas appeal.

## ANALYSIS

### Prejudice to Owners

The Kapelas argue that the trial court erred in basing its decision upon a showing of prejudice to one owner, rather than all owners. The Sferras respond that a showing of great prejudice to one owner is sufficient to force a partition by sale. We agree with the Kapelas that Washington requires a showing of great prejudice to the owners, rather than just to one owner, before the court can order a partition by sale. Contrary to the Sferras' assertions, the Kapelas properly preserved this argument below and are not estopped from arguing that there must be great prejudice to the owners.

*Preservation of the Issue*

The Sferras maintain that this court should not consider the issue because

_____

[4] CP at 947.
[5] CP at 944.

4

the Kapelas did not argue it below. Because the Kapelas raised the issue to the trial court, we disagree.

We generally will not review issues raised for the first time on appeal. RAP 2.5(a). But the Kapelas did make this argument below. The Kapelas articulated this argument best at the hearing on their motion to confirm in part and set aside in part the referees' final report:

> This prospective sewer burden isn't great prejudice to the owners; it's prejudice to one owner if they go first and if there's not some protection for them. So great prejudice legally is a larger concept than great prejudice to their particular interest.
> And it's worth reading the cases. The cases talk about great prejudice to the "owners." Because the original idea is if you divide property up, are you creating a situation where the sum of the two parts is materially less than the sum of the whole? They've never proven it. All they've proven is that if they got stuck paying for the entire sewer tab, it would be unfair to them.[6]

This was sufficient to preserve the issue for appellate review.

### Judicial Estoppel

The Sferras also argue that the Kapelas are judicially estopped from contending that the statute requires great prejudice to all owners because they advanced an inconsistent position below. Again, we disagree.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position." Cunningham v. Reliable Concrete Pumping, Inc., 126 Wn. App. 222, 224-25, 108 P.3d 147 (2005). The purposes of the doctrine include to "'avoid inconsistency, duplicity, and . . .

---

[6] RP (Mar. 13, 2015) at 31. In their written motion, the Kapelas argued that the referees' decision put them "at the mercy of the minority interest-holding" Sferras. CP at 826.

waste of time.'" Cunningham, 126 Wn. App. at 225 (alteration in original) (internal quotation marks omitted) (quoting Johnson v. Si-Cor, Inc., 107 Wn. App. 902, 906, 28 P.3d 832 (2001)).

The main factors for the court to consider are "(1) whether 'a party's later position' is 'clearly inconsistent with its earlier position'; (2) whether 'judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled'; and (3) 'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538-39, 160 P.3d 13 (2007) (internal quotation marks omitted) (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). The inconsistent positions "must be diametrically opposed to one another." Kellar v. Estate of Kellar, 172 Wn. App. 562, 581, 291 P.3d 906 (2012).

Here, the Kapelas currently argue that, under RCW 7.52.130, the court cannot order a partition by sale unless a partition in kind would cause great prejudice to the owners, plural. Below, they acquiesced in both the trial court's and the Sferras' view that the statute required partition by sale if the Sferras could prove that they would suffer great prejudice from a partition in kind.

These competing interpretations of the statute are not diametrically opposed. For example, the Kapelas' main argument at trial was that the trial court had to order a partition in kind because it would not cause *either party* great prejudice. That argument fits within both interpretations.

6

Additionally, it is not clear that the Kapelas took the position that great prejudice to the owners meant great prejudice to the Sferras, let alone mislead the trial court about their position. Both parties started by describing the question of great prejudice as whether partition in kind would cause "great prejudice to both parties."[7] They discussed "great prejudice" in terms of reduction to the aggregate value of the properties. In their trial brief, the Kapelas claimed that, "if the [p]roperty were partitioned . . ., the combined value of the two partitioned parcels would actually exceed the value of the unsegregated [p]roperty."[8] The Sferras claimed that any partition would "result in a material loss of value" to both parcels.[9]

The Sferras were the first to narrow the question to whether a partition in kind would cause great prejudice to them. When addressing the role of owelty, they stated, "But owelty cannot be used to short circuit the required initial inquiry into whether partition in kind of the [p]roperty would cause 'great prejudice' to the *Defendants*."[10] The Sferras applied the same reasoning in their closing argument at trial.[11] The trial court also phrased the question narrowly in its summary decision, noting that the "primary consideration is the measure of economic loss to the party objecting to partition."[12]

---

[7] CP at 8.
[8] CP at 19-20.
[9] CP at 39.
[10] CP at 47 (emphasis added).
[11] "There is clearly a material economic harm from the cost of $1.35 million to put in a sewer for one-fourth of the property." Report of Proceedings (RP) (Feb. 27, 2013) at 107. "And the sewer is clearly great prejudice to the one-quarter owner." RP (Feb. 27, 2013) at 109.
[12] CP at 195.

In their proposed findings of fact and conclusions of law, and proposed order appointing referees, the Kapelas framed the question of "great prejudice" as whether the Sferras would suffer great prejudice.[13] But this was after both the Sferras and the trial court had already framed the question that way. It does not appear that the Kapelas attempted to mislead the trial court. Overall, the factors weigh against applying judicial estoppel. Accordingly, we consider the merits of the Kapelas' argument.

*Statutory Requirement for Partition by Sale*

The Kapelas argue that the trial court erred by misinterpreting the statute to allow a partition by sale upon a showing that a partition in kind would cause great prejudice to just one of the owners. The Sferras counter that this interpretation contradicts the equitable purpose of the statute and would produce "nonsensical results."[14] The statute does require a showing of prejudice to all the owners. The trial court abused its discretion by ordering a sale without that showing.

We review a trial court's partition decisions for an abuse of discretion. Friend v. Friend, 92 Wn. App. 799, 803, 964 P.2d 1219 (1998). The trial court abuses its discretion if it bases its ruling on "an erroneous view of the law." Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858

---

[13] Conclusion of Law 6: "Defendant did not meet its burden of proof to convince the Court that it is not possible to carve out an equitable partition *without material pecuniary loss to Defendant*—i.e., such that the relative value of the share would be materially less than the sum Defendant would realize from a one-fourth share of the proceeds of a sale of the whole." CP at 234 (emphasis added); Order Regarding Appointment of Referees: "[T]he Referees shall submit a report . . . stating that, under the provisions of RCW 7.52.130, partition cannot be made *without great prejudice to one or both [p]arties*." CP at 241 (emphasis added).
[14] Br. of Resp't Bellevue-Overlake Farm, LLC at 48.

P.2d 1054 (1993). In order to determine whether the trial court erred in this case, this court must conduct a de novo analysis of the statute authorizing partition by sale. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

Statutory analysis begins with the statute's plain meaning. Lake, 169 Wn.2d at 526. This court determines plain meaning "'from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" Lake, 169 Wn.2d at 526 (quoting State v. Engel, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009)).

Here, the trial court ordered a sale of the property under the authority granted to it by RCW 7.52.130. It authorizes a trial court to order a partition by sale when there is great prejudice to the owners, plural:

> If the referees report to the court that the property, of which partition shall have been decreed, or any separate portion thereof is so situated that a partition thereof cannot be made without great prejudice to the *owners*, and the court is satisfied that such report is correct, it may thereupon by an order direct the referees to sell the property.

RCW 7.52.130 (emphasis added). Other sections of the partition chapter that contemplate a sale of the property also use the plural "owners." See RCW 7.52.010, .080. By contrast, the section of the chapter that authorizes owelty distinguishes between owners:

> When it appears that partition cannot be made equal between the parties according to their respective rights, without prejudice to the rights and interests *of some of them*, the court may adjudge compensation to be made by *one party to another* on account of the inequality of partition.

RCW 7.52.440 (emphasis added).

9

Thus, there are two kinds of prejudice, but only one kind forces a partition by sale. First, there is great prejudice to both parties, meaning that a partition in kind would reduce the value of the whole property. As the Kapelas have argued, this type of prejudice occurs when the value of the partitioned parcels would be materially less than the value of the undivided property. Second, there is prejudice to one party but not the other. In the first case, the court should order a partition by sale. In the second, the court should order a partition in kind and order the party who receives a disproportionately high value to compensate the other.

Washington courts have followed this approach. In Hegewald v. Neal, the trial court ordered a partition by sale when the referees reported that a partition in kind would "destroy the usefulness of the property." 20 Wn. App. 517, 522-23, 582 P.2d 529 (1978) (emphasis omitted). The court noted that the aggregate value of partitioned parcels would be less than if the land were sold as a unit. Hegewald, 20 Wn. App. at 526. The Court of Appeals upheld the decision because the property would have lost one third of its value if partitioned in kind. Hegewald, 20 Wn. App. at 526-27.

Washington's Supreme Court affirmed an order of partition by sale when an entire property was covered with one building. Huston v. Swanstrom, 168 Wash. 627, 628-30, 13 P.2d 17 (1932). The court also noted that a mortgage encumbered the entire property and that, if partitioned, "each tract would remain subject to the entire incumbrance." Huston, 168 Wash. at 631.

Even when the court orders partition in kind, as it did in Williamson Investment Co. v. Williamson, it bases its decision on the value of the property if

sold as a whole, compared to the aggregate value of the parcels. 96 Wash. 529, 537-39, 165 P. 385 (1917). There, the court set out the test for great prejudice to the owners as "'whether the value of *the share of each* in case of a partition would be materially less than his share of the money equivalent that could probably be obtained for the whole.'" Williamson, 96 Wn. at 536 (emphasis added) (quoting Idema v. Comstock, 131 Wis. 16, 110 N.W. 786 (1907)).

Washington's strong policy in favor of partitions in kind supports the Kapelas' interpretation. See, e.g., Friend, 92 Wn. App. at 803 ("Partition in kind is favored wherever practicable."); Williamson, 96 Wash. at 535 ("The power to convert real estate into money against the will of the owner, is an extraordinary and dangerous power, and ought never to be exercised unless the necessity therefor is clearly established.'") (quoting Vesper v. Farnsworth, 40 Wis. 357, 362 (1876)).

The Sferras argue that partition by sale is appropriate whenever a physical partition cannot be done equitably. They argue that Hegewald supports their position because there the court could have avoided prejudice to the majority tenant by awarding that tenant a parcel containing all the hot springs. Thus, the court ordered a partition by sale even though a partition in kind would prejudice only one of the owners. This argument ignores the finding in that case that the hot springs were "an unusual amenity" with "substantial value if used in connection with the rest of the land, but not otherwise." Hegewald, 20 Wn. App. at 519. It is impossible to tell from the case whether dividing the minority tenant's one-fifth of the land would impact "the rest of the land" enough to diminish the hot springs

value. Hegewald, 20 Wn. App. at 519. Instead, the trial court and Court of Appeals properly found great prejudice to the owners based on the referees' finding that a partition in kind would "destroy the usefulness of the property." Hegewald, 20 Wn. App. at 523 (emphasis omitted). We reject the Sferras' interpretation of Hegewald.

The Sferras also rely on several out of state cases where a partition for sale was ordered when prejudice was not shown to all parties. They are not persuasive.

The Sferras cite Georgian v. Harrington and Sung v. Grover, but the statutes governing partition by sale in those cases are too dissimilar to Washington's to support the Sferras' position. 990 So.2d 813, 816 (Miss. Ct. App. 2008); No. CV020815521S, 2003 WL 1962830, at *3 (Conn. Super. Ct. Mar. 27, 2003).[15] Both allow partition by sale under much broader circumstances than Washington does.

In the two cases the Sferras cite with statutes similar to Washington's, the parties seeking a partition in kind sought to carve out for themselves the most valuable portion of the land. Haggerty v. Nobles, 244 Or. 428, 431-34, 419 P.2d 9 (1966) (a cotenant with a one eighth undivided share of a 680-acre farm sought to set apart the 85 acres that contained the dwellings and other farm buildings, "'the heart'" of the farm, for himself); Keen v. Campbell, 249 S.W.3d 927, 929-30 (2008) (a cotenant with a one fifth undivided share of a 41-acre farm sought to have seven or eight acres of the more valuable farmland set aside for himself).

In both cases, it is reasonable to assume that partitioning the property in the

---

[15] Georgian relies on Mississippi Code Annotated § 11-21-11 (Rev. 2004), which allows a partition by sale whenever it would "'better promote the interest of all parties than a partition in kind.'" 990 So.2d at 816. Sung relies on Connecticut General Statutes § 52-500, which also allows the sale of the property when it will "better promote the interests of the owners." 2003 WL 1962830, at *3 n.8.

way suggested by the minority cotenants would have greatly diminished the value of the majority cotenants' parcels. We cannot tell whether that would have meant that the aggregate value of the parcels would have been materially less than the value of the whole property. Also, neither case discusses what role owelty could have played. These cases are not persuasive enough to dictate a broader interpretation of Washington's partition by sale statute.

In short, RCW 7.52.130 requires a showing of great prejudice to the owners, plural, before the court may order a sale. Here, the trial court adopted the referees' conclusion "that a partition-in-kind would cause great prejudice to the one-fourth owner."[16] It did not evaluate how the need for a sewer extension would impact the value of the entire property or the value of the Kapelas' property.[17] This was an error. The trial court, and the referees, should have determined whether partitioning the property would create two parcels whose aggregate value was materially less than the value of the whole property.

We remand to the trial court to consider the facts under the correct legal standard and take any further action necessary to achieve an equitable result. But we reach the Kapelas' remaining arguments to a limited extent because they are likely to recur on remand.

<u>Sewer Extension</u>

The Kapelas argue that the court abused its discretion by considering the impact of the need for sewer once it had determined that the property is physically

---

[16] CP at 1008.
[17] The Sferras concede in their brief that the court did not make any findings about prejudice to the Kapelas.

13

capable of division. This was not error.

As discussed above, the test for when a partition in kind causes great prejudice is "'whether the value of the share of each in case of a partition would be materially less than his share of the money equivalent that could probably be obtained for the whole.'" Williamson, 96 Wash. at 536 (quoting Idema, 131 Wis. at 16). The "value of a piece of property is its fair market value: 'Fair market value has been defined as the price [that] a well-informed buyer would pay to a well-informed seller, where neither is obliged to enter into the transaction.'" Carson v. Willstadter, 65 Wn. App. 880, 884, 830 P.2d 676 (1992) (internal quotation marks omitted) (quoting State v. Sherrill, 13 Wn. App. 250, 255, 534 P.2d 598 (1975)). "[F]air market value necessarily takes into consideration present uses and speculative future uses." Carson, 65 Wn. App. at 886. A well-informed buyer may consider the development potential of the property. Carson, 65 Wn. App. at 884-86 (in that case, the development depended on whether the parcel could be subdivided and whether a sewer district would serve the area in the future).

Here, extending the sewer line to the property would cost approximately $1.4 million. The possibility of having to pay over a million dollars in order to develop land might impact a well-informed buyer's valuation of the property. The trial court did not abuse its discretion by considering the needs of future developers.

The Kapelas also argue that, even assuming the need for a sewer extension is a proper consideration, the trial court erred by relying on the referees' speculation that a sewer extension would be necessary. We reject this argument

because the referees' finding was supported by facts, not mere speculation.

"A presumption exists in favor of trial court's findings of fact [in partition action], and the party claiming error has the burden of showing findings are not supported by substantial evidence." Carson, 65 Wn. App. at 883.

The referees concluded that the sewer extension would be necessary for two reasons. First, they did not believe that the city of Bellevue would allow the parties to develop the land with an on-site septic system instead of a sewer. Second, they believed that on-site septic systems were incompatible with high-end residential development. The Kapelas do not challenge the referees' basis for the second reason:

> [T]he use of on-site septic systems is inconsistent with high-end, large lot development as would be proposed with development of the [p]roperty. On-site systems can interfere with an owner's desire to locate patios, sports courts, pools, and other site amenities typically associated with this type of development. Furthermore, on-site disposal of domestic sewage may be perceived as inconsistent with the high-end nature of any proposed development.[18]

Regardless of whether the referees' conclusion that the city of Bellevue would require a variance is correct, it was appropriate for the referees to determine that a sewer extension would be necessary to develop the property according to its highest and best use. And it was not an abuse of discretion for the trial court to rely on that determination.

Equitable Power to Impose a Covenant

The Kapelas argue that the trial court abused its discretion by relying on the parties' inability to cooperate as a basis for refusing to impose a detailed covenant

---

18 CP at 933.

for future development of the sewer. They also argue that the trial court's decision not to impose the covenant was an abdication of its equitable powers, and thus, an abuse of discretion. We reject both of these arguments and hold that the decision whether to impose the covenant was within the trial court's discretion.

Partition "'contemplates an absolute severance of the individual interests of each joint owner, and, after partition, each has the right to enjoy his estate without supervision, let, or hindrance from the other. Unless this can be accomplished, then the joint estate ought to be sold, and the proceeds divided.'" Hegewald, 20 Wn. App. at 523 (quoting Brown v. Cooper, 98 Iowa 444, 454, 67 N.W. 378 (1896)). In Hegewald, one reason that the court found that a partition in kind was not feasible was because it would have required retaining the hot springs in common, assessing the costs of improvements to the owners proportionately, and then distributing the waters and charging for them on a monthly basis. 20 Wn. App. at 523.

Here, the covenant, as drafted by the referees, required both parties to place funds for sewer development into an escrow account, and then contemplated the parties working together on developing the sewer line over years. While the covenant would not require the permanent entanglement described in Hegewald, it would still require substantial cooperation in the future. The referees concluded that the parties had difficulty cooperating and that "[p]redicating a solution on such cooperation would only place [the trial court] in the position of having to police a difficult process of partition and land development over a long period of time."[19]

---

[19] CP at 947.

Because of the nature of the proposed covenant, the parties' ability to cooperate was a proper consideration.

The Kapelas cite several out-of-state cases in which an appellate court reversed a trial court's decision when the trial court relied on adversarial parties' disagreements or hostility. These cases are not persuasive because none of them involve a decision to force the parties to cooperate in the future. Myers v. Myers, 176 W. Va. 326, 329, 342 S.E.2d 294 (1986) (partition of two parcels); Brown v. Brown, 402 S.C. 202, 209, 740 S.E.2d 507 (S.C. Ct. App. 2013) (partition of two parcels); Dewrell v. Lawrence, 58 P.3d 223, 227 (Okla. Civ. App. 2002) (amount and propriety of owelty in partition action); In re Estate of McKillip, 284 Neb. 367, 378, 820 N.W.2d 868 (2012) (partition).

We also reject the Kapelas' argument that the trial court abdicated its equitable powers. The record demonstrates that the trial court and the referees considered the propriety and effectiveness of ordering the development covenant sought by the Kapelas and decided against it.

The Sferras, on the other hand, argue that, once the trial court determined that they would suffer great prejudice, it lacked the authority to impose a development covenant. The Sferras' position is inconsistent with the broad scope of the court's equitable power.

It is well established that the trial court has "great flexibility in fashioning relief" in partition proceedings. Cummings v. Anderson, 94 Wn.2d 135, 143, 614 P.2d 1283 (1980). "[A] court in the exercise of its equitable powers may fashion remedies to address the particular facts of each case, even if the partition statute

does not strictly provide for such a remedy." Kelsey v. Kelsey, 179 Wn. App. 360, 369, 317 P.3d 1096, review denied, 180 Wn.2d 1017, 327 P.3d 54, cert. denied, 135 S. Ct. 451, 190 L. Ed. 2d 330 (2014).

As just explained, the trial court did not abuse its discretion by failing to impose a development covenant. But it has the power to impose one. On remand, the trial court may consider whether a development covenant would be appropriate and what the terms of that covenant might be.

We reverse and remand for further proceedings consistent with this opinion.

_Trickey, A.C.J._

WE CONCUR:

_Appelwick, J._          _Cox, J._

18