THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

HIDDEN RIVER RANCH, LLC, a
Washington limited liability company;
CALVIN EVANS, JUNIOR,

     Appellants,

   v.

LINDSEY RODRIGUEZ and CORY
EVANS,

     Respondents,

and

CALVIN EVANS, III,

     Defendant.

No. 82228-4-I

DIVISION ONE

UNPUBLISHED OPINION

ANDRUS, C.J. — Hidden River Ranch, LLC and Calvin Evans, Jr. (referred to hereafter as HRR) appeal an order requiring the sale of six parcels of land owned by HRR and Cal Jr.'s two children, Lindsey Rodriguez, and Calvin Evans III, as tenants in common. [1] HRR currently operates the property as a horse ranch and boarding business. In opposing Lindsey's request to sell the ranch property in its entirety, HRR proposed two alternatives: granting Cal Jr. a life estate with the

---

[1] In their appellate briefs, the parties each refer to one another and the four Evans children by their first names. For the sake of clarity, we follow that convention here. No disrespect is intended.

Citations and pin cites are based on the Westlaw online version of the cited material.

owners retaining residual title, or selling only the most valuable tax parcel, the sale proceeds of which could be used to pay Lindsey and Cal III the value of their ownership interest. The trial court rejected these proposals and granted Lindsey's motion for sale, finding that a partition in kind cannot be made without great prejudice to all of the owners and selling the property as a whole would preserve the highest value for all the co-owners. We affirm.

FACTS

The property at the center of this dispute is a horse ranch originally owned by Calvin Evans Sr. Cal Jr. moved to the ranch with his former wife and their four children, Lindsey Rodriguez, Calvin Evans III, Cory Evans, and Jesse Evans, in 2005. The ranch contains a house, stables, barns, and a riding arena. Following Cal Sr.'s death in 2011, the probate court found that Cal Jr. had financially exploited his father and deemed him to have predeceased his father under RCW 11.84.030.[2] The ranch passed to Cal Jr.'s four children as equal tenants in common.

In 2017, Cory and Jesse entered into an agreement with their father to quitclaim their interest in the property to Cal Jr.'s limited liability company, HRR, and in exchange, Cal Jr. agreed "to execute a will in which Cory and Jesse are each named as beneficiaries and each to receive one half of any interest" that Cal Jr. would have in the property. At the time Lindsey filed this lawsuit, HRR owned a 50 percent interest in the property, while Lindsey and Cal III each owned a 25 percent interest.

---

[2] This court affirmed the probate court's decision. *In re Estate of Evans,* No. 69214-3-I, slip op. at 3 (Dec. 21, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/692143.pdf.

In August 2019, Lindsey sought an order requiring the sale of the entire property on the grounds that partition in kind was not feasible or practical without great prejudice to the owners. HRR opposed partition.[3] Cory intervened in Lindsey's action, and filed a third-party complaint against HRR and Cal Jr., seeking a judicial dissolution of the LLC and the imposition of a constructive trust based on allegations that the agreement he executed transferring his interest in the real estate to the LLC lacked consideration.[4] Cory supported Lindsey's request for partition by sale.

HRR's position regarding partition evolved through the course of litigation. In discovery, HRR stated that "[p]artition in kind of 25%, 25%, and 50% value is not feasible due to the nature of the property and structures. Trying to separate the property into three parcels or four parcels would destroy most of the value." HRR seemed to backtrack from this position in an October 13, 2020 pretrial issues statement, in which it stated that "[t]he parties do not agree whether the subject property can be partitioned in kind without substantial harm to its value and great prejudice to the parties." HRR proposed that "[i]f any partition is ordered, the property with the home on it is clearly the most valuable piece and should be saleable for enough cash to pay the properly valued shares of Lindsey 'Evans' Rodriquez and Calvin Evans III. The remainder of the property should remain in its current ownership and condition." In its October 26, 2020 trial brief, however, HRR opposed all partition remedies and, in the alternative, asked that any sale be

---

[3] Although Cal III appeared pro se in the partition action, he filed no pleadings below and no appellate brief with this court.
[4] Trial on Cory's claims was set to begin on October 4, 2022.

subject to a life estate in the property that it asked the court to grant Cal Jr.

When the parties appeared for trial, the trial court admitted into evidence two documents: the deeds granting the property to the tenants in common and a Snohomish County tax assessor summary showing that the land is comprised of six separate tax parcels.[5]  The court, based on arguments of counsel, concluded that no material facts were in dispute and granted Lindsey's petition to partition the property.  It reserved ruling on Lindsey's request that the property be sold in its entirety and HRR's request that Cal Jr. be granted a life estate.  The court instructed the parties to bring their respective requests for relief to the court by motion.

Lindsey moved for a sale of the entire property and Cory joined the motion. Lindsey submitted the declaration and appraisal report of Jim Dodge, a certified real estate appraiser, who opined that the probable market value of the property, located near Sultan, Washington, in east Snohomish County, was $1,150,000 if sold "as is," for fee simple title.  He testified that the property consists of a 31.83-acre rectangular shaped tract of land, improved with a 3,030 square foot single-family residence, a 792-square foot garage, six outbuildings—with a barn, machine sheds, and stables—and a riding arena.

Dodge confirmed that the property consists of six contiguous tax parcels. The tax assessed values of these parcels vary greatly, with four of the parcels assessed at values ranging from a low of $900 to a high of $11,700.  A fifth tax parcel, identified as "270803-004-007-00" had a tax assessed value of $499,400.

---

[5] These exhibits are not in the record before this court.

This tax parcel is approximately 10.9 acres in size and contains the single-family home. The sixth and final tax parcel, "270803-004-014-00," with a tax assessed value of $379,100, is 9.1 acres in size and contains a barn, garage, shop, well house, and other improvements. The deed conveying the property to Cal Jr.'s four children, however, contains only a single legal description that combines all of these tax parcels into one large parcel.[6]

The ranch is accessed from Mann Road, a paved, two-lane road that terminates east of the property. Dodge described the northern third of the site as a floodway bordering the Skykomish River. It appears that some of the tax parcels, including those in the floodway, have no road access other than the driveway serving the residence and horse boarding facilities.

After evaluating the location, site, access, topography, available utilities, the presence of sensitive areas, zoning restrictions, site improvements and building improvements, Dodge valued the property using three different methodologies—the cost approach, the income approach, and the sales comparison approach. This valuation assessment led him to conclude:

> [T]he highest and best use of the subject property is in its current configuration as a residence with horse training and boarding facilities and acreage. It would be very impractical or impossible, in my opinion, to divide the property into three parcels with values proportionate for the respective co-tenants without substantial loss of value from the property as a whole. The residence and barn constitute most of the market value, and the surrounding pasture lands would have little value unless sold with the horse training and boarding facility.

---

[6] The parties do not appear to agree on the exact character of the property. HRR asserts that it is actually 40 acres divided into "four adjacent legal parcels," which the assessor divided into six tax lots.

HRR proposed that the parties sell only one of the tax parcels, the 10-plus acre parcel containing the home, or alternatively, asked the court to award a life estate for Cal Jr. in the entire ranch, with the co-tenants retaining ownership of the residual property interest. HRR supported its arguments with the declaration of local realtor, Jennifer Schultz, who described the property as comprising only two parcels, a 10-acre parcel adjacent to and north of Mann Road, and a second parcel of approximately 20 acres east of the first parcel, also adjacent to Mann Road. It is unclear from the record how Schultz developed these parcel size estimates. Schultz opined that the 10-acre lot, located at 35131 Mann Road, on which the house sits, could be sold for $800,000.[7] She valued the remaining acreage with stables and barns at $400,000. HRR relied on Schultz's declaration to argue that his proposed solution would yield enough money to pay Lindsey and Calvin III for their shares in the property, while allowing him to continue operating the horse ranch.

The trial court granted Lindsey's motion for sale on January 6, 2021 and denied HRR's request for a life estate to Cal Jr., but did so without entering findings of fact at that time. This court granted HRR's motion for discretionary review.

After Lindsey received HRR's opening brief, in which it raised the lack of findings of fact as a basis for reversal, Lindsey asked the trial court to amend its January 6, 2021 order with findings of fact and conclusions of law. Over HRR's

---

[7] Cory Evans testified that the parcels, as Schultz described them, would require a boundary line adjustment because the largest tax parcel's boundary line bisects a horse shelter, a chicken coop, a shop, a five-bay garage, and a barn.

objections, this court granted permission under RAP 7.2(e) for the trial court to amend its order.

HRR then submitted a second declaration by Jennifer Schultz, in which she disclosed the existence of an offer to purchase, dated November 9, 2021, in which William and Megan Binckley, friends of Cal Jr., offered to purchase tax parcel 270803-004-007-00, the parcel containing the house, for the price of $800,000. The "seller" in these documents was identified as HRR and Cal III. Lindsey's name did not appear on the proposed purchase and sale agreement.

Lindsey objected to this new evidence and asked the trial court to strike it. The trial court granted Lindsey's request and limited its findings and conclusions to the record before it when it considered the original motion for sale. The trial court entered its findings of fact and conclusions of law on December 29, 2021.

The trial court found Dodge's appraisal report and opinions credible and found Schultz's testimony not credible because she did not address the key issue of whether HRR's proposal would reduce the overall value of the property. The court further found that HRR failed to present evidence on how to appraise the value of the requested life estate and that selling off just one of the parcels, as proposed by HRR, would cause great prejudice to the owners. The trial court therefore concluded that the sale of the whole property was appropriate and permitted by RCW 7.52.080.

ANALYSIS

HRR challenges the order for sale, arguing the trial court's findings of fact are not supported by substantial evidence, its findings do not support its legal conclusions, and it applied the incorrect legal standard for determining whether

partition by sale was the appropriate remedy.[8]  We reject these arguments and affirm the sale order.[9]

Standard of Review

We review a trial court's partition decision for abuse of discretion.  *Overlake Farms B.L.K. III, LLC v. Bellevue-Overlake Farm, LLC*, 196 Wn. App. 929, 939, 386 P.3d 1118 (2016).  The trial court abuses its discretion if it bases a ruling on an erroneous view of the law.  *Id.*  We review whether a trial court's findings of fact are supported by substantial evidence and whether those findings, in turn, support the conclusions of law.  *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).  We will not review credibility determinations or reweigh evidence on appeal.  *In re Marriage of Wehr*, 165 Wn. App. 610, 615, 267 P.3d 1045 (2011).

HRR urges us to review the trial court's findings of fact de novo because the findings were based solely on a paper record.  Washington courts often afford less deference to a trial court's findings where the record is composed entirely of affidavits and other documentary evidence.  *Spokane Police Guild v. Wash. State*

---

[8] In addition to the order for sale, HRR assigned error to the trial court's December 2, 2020 order granting partition and its February 9, 2021 order denying reconsideration of the sale order.  HRR, however, does not raise any legal error in these orders separate from the challenges to the merits of the order for sale.  Accordingly, we need not separately address these assignments of error. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (appellant waives assignment of error by failing to present argument in opening brief on the claimed error).

[9] Cory Evans argues on appeal that the doctrine of judicial estoppel precludes HRR from arguing that the trial court erred in ordering partition by sale because, in the course of litigation below, Cal Jr. admitted that the property could not be partitioned in kind according to the respective ownership interests without a substantial loss in property value.  But the position HRR took below is not inconsistent with the one he now asserts on appeal.  While HRR initially only sought a life estate as an alternative to partition by sale, it ultimately did ask the trial court to order the sale of a single tax parcel so HRR could use its portion of the sale proceeds to buy out the children's interest in the remaining acreage.  Because these two positions are not inconsistent, the doctrine of judicial estoppel does not apply.

*Liquor Control Bd.*, 112 Wn.2d 30, 35-36, 769 P.2d 283 (1989); *Federal Way Family Physicians, Inc. v. Tacoma Stands Up for Life*, 106 Wn.2d 261, 266, 721 P.2d 946 (1986).

But this principle applies only where the trial court has not made credibility determinations or weighed conflicting evidence. *See Spokane Police Guild*, 112 Wn.2d at 35-36 (the appellate court stands in the same position as the trial court where the record on appeal "consists of affidavits and documents, and the trial court has neither seen nor heard testimony requiring it to assess the credibility or competency of witnesses, nor had to weigh the evidence or reconcile conflicting evidence in reaching a decision").

Because the trial court made credibility assessments and weighed the evidence presented by the parties, the substantial evidence standard of review applies. *See also In re Marriage of Rideout*, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003) (*"*[W]here the proceeding at the trial court turned on credibility determinations and a factual finding of bad faith, it seems entirely appropriate for a reviewing court to apply a substantial evidence standard of review.").

<u>Legal Standard for Partition by Sale</u>

In the absence of an agreement between the owners to hold property as a tenancy in common for a fixed period of time, any owner has an absolute right to partition. *See Hamilton v. Johnson*, 137 Wash. 92, 100, 241 P. 672 (1925). The right of partition is governed by chapter 7.52 RCW. *Anderson & Middleton Lumber Co. v. Quinault Indian Nation*, 130 Wn.2d 862, 873, 929 P.2d 379 (1996).

RCW 7.52.010 provides:

When several persons hold and are in possession of real property as tenants in common, . . . an action may be maintained by one or more of such persons, for a partition thereof, according to the respective rights of the persons interested therein, and for sale of such property, or a part of it, if it appear[s] that a partition cannot be made without great prejudice to the owners.

The applicable legal standard is further set out in RCW 7.52.080:

If it be alleged in the complaint and established by evidence, or if it appear[s] by the evidence without such allegation in the complaint, to the satisfaction of the court, that the property or any part of it, is so situated that partition cannot be made without great prejudice to the owners, the court may order a sale thereof, and for that purpose may appoint one or more referees.  Otherwise, upon the requisite proofs being made, it shall decree a partition according to the respective rights of the parties as ascertained by the court, and appoint three referees, therefor, and shall designate the portion to remain undivided for the owners whose interests remain unknown or are not ascertained.

If partition cannot be made equal between the parties, a court may order that one party compensate the other party or parties "on account of the inequality of partition."  RCW 7.52.440.

"Partition in kind is favored wherever practicable."  *Friend v. Friend*, 92 Wn. App. 799, 803, 964 P.2d 1219 (1998).[10]  The statute conditions a court's power to order a sale on a showing of great prejudice, which effectively creates "a presumption that land held in common can be equitably divided according to the interests of the parties."  *Williamson Inv. Co. v. Williamson*, 96 Wash. 529, 537, 165 P. 385 (1917).  The party seeking partition by sale has the burden of establishing that partition in kind would result in great prejudice to each of the owners.  *Falk v. Green*, 154 Wash. 340, 342, 282 P. 212 (1929).  Great prejudice means "material pecuniary loss."  *Williamson*, 96 Wash. at 537.  "Great prejudice

---

[10] "Partition in kind" is the act of dividing real property held jointly or in common by two or more persons into individually owned interests.  BLACK'S LAW DICTIONARY, 1347 (11th ed. 2019).

to the owners" means "that a partition in kind would reduce the value of the whole property. . . . [T]his type of prejudice occurs when the value of the partitioned parcels would be materially less than the value of the undivided property."[11] *Overlake Farms*, 196 Wn. App. at 940.

Sufficiency of Evidence

HRR argues that the trial court's findings of fact, particularly its findings that partition in kind would cause great prejudice to the owners, are not supported by substantial evidence. Its challenge covers Findings of Fact 3 through 9.

Finding of Fact 3 reads:

> In their discovery responses defendant HRR and third-party defendant Cal Evans Jr. also allege, under oath, that "partition in kind . . . is not feasible due to the nature of the property and structures. Trying to separate the property . . . would destroy most of the value. . . . I am of this opinion based on my knowledge of the property." This allegation is consistent with the allegation of great prejudice in Ms. Rodriguez's complaint.

Cal Jr. did in fact make this statement in his discovery responses, as he confirmed in a supplemental declaration. Lindsey alleged in her complaint that "[d]ue to the conditions of the subject real property and relationship of these parties, partition of the property into smaller parcels distributed to the co-tenants is not feasible or practical without great prejudice to these owners." This allegation is consistent with Cal Jr.'s testimony. Although Cal Jr. sought to distance himself from his testimony in a later declaration, claiming that he lacked sufficient information about

---

[11] HRR contends that the trial court abused its discretion in ordering the sale in January 6, 2021 without making any factual findings of great prejudice. The trial court, however, remedied this error when, with leave from this court, it entered its December 29, 2021 order on Lindsey's motion for clarification and made the statutorily required findings of fact and conclusions of law. Any assignment of error relating to the lack of findings in the January 6, 2021 order is now moot.

the property at the time, the trial court was within its discretion to find the earlier testimony the more credible. Finding of Fact 3 is supported by the record.

Finding of Fact 4 reads:

> Plaintiff's expert, appraiser Jim Dodge, opined that the property cannot be partitioned in kind without great prejudice (substantial loss of value) to the owners. Much of the property is pasture and some of the property is in the floodway of the Skykomish River, making partition in kind not economically feasible. Mr. Dodge stated that the highest and best use of the property is as a residence with barns and pasture in its current configuration as a whole, not partitioned to separate parcels. Mr. Dodge is a certified appraiser with significant knowledge and experience. The court finds Mr. Dodge's opinion to be credible, and consistent with Ms. Rodriguez's and Mr. Evans' allegations.

The factual finding accurately summarized Dodge's opinions as set out in his declaration and accompanying real estate appraisal. Dodge opined that the property, if sold in its entirety, had a value of $1,150,000 and that "the highest and best use of the subject property is in its current configuration as a residence with horse training and boarding facilities and acreage." He also concluded that "[i]t would be very impractical or impossible . . . to divide the property into three parcels with values proportionate for the respective co-tenants without substantial loss of value from the property as a whole." His opinions are consistent with Lindsey's contention that separating the parcels would cause great prejudice to the owners.

The court's assessment of Dodge's experience and credentials is also supported by Dodge's professional certification. He testified that his opinions were developed "in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP)," that he had made a personal inspection of the property, that he prepared his report "in compliance with the Code of Professional Ethics and

Standards of Professional Practice of the Appraisal Institute." Finding of Fact 4 is thus supported by substantial evidence.

Finding of Fact 5 reads:

> In the hearing on October 27, 2020 defendant HRR and Cal Evans Jr. argued that partition is an equitable remedy with a wide range of potential outcomes. They stated: "We could also order a life estate for my client, which is really in our opinion what should happen." This court finds that the defendant at the October 27, 2020 hearing argued for a life estate as an alternative to plaintiff's request for a sale of the property.

The court again accurately summarized the argument that HRR advanced at the October 27, 2020 hearing. HRR repeatedly argued for a life estate in lieu of sale. The court explicitly denied the request for a life estate for the benefit of Cal Jr., as an alternative to a sale, at the January 6, 2021 hearing. Finding of Fact 5 is supported by substantial evidence.

Finding of Fact 6 repeats a significant portion of Finding of Fact 5, and ends with the finding "HRR and Cal Evans Jr. have not presented an appraisal or other evidence [on] how to value a life estate for Cal Evans Jr." Finding of Fact 7 similarly reads:

> At the hearing on the Motion for Sale on Dec. 1, 2020 HRR and Cal Evans Jr. did not present an appraisal or economic evidence to support partition in kind or a life estate for Cal Evans Jr. in some or all of the land. The court granted their request for additional time to submit evidence in response to the motion by Dec. 8, 2020. At the hearing on December 1, 2020 HHR and Cal Evans continued to argue for a life estate as an alternative to partition by sale. The court granted additional time to allow HRR & Cal Evans Jr. to submit evidence supporting the request for a life estate as an alternative to partition by sale.

HRR did not present the trial court with any evidence of the value of a life estate in the ranch property or the costs associated with such a grant to Cal Jr. The clerk's

minutes from the December 1, 2020 hearing indicate that the trial court took Lindsey's motion for a sale under advisement and gave HRR until the "close of business on Tuesday, December 8, 2020" to file declarations in support of a life estate. Findings of Fact 6 and 7 are thus supported by substantial evidence.

Finding of Fact 8 reads:

The parties submitted additional declarations and memoranda (listed above) which the court considered before ruling on the Motion for Sale. Declarations of Cal Evans Jr. and of Jennifer Schultz did not offer economic or appraisal evidence how to value a life estate for Mr. Evans. Ms. Schultz did not address the value of the entire property if sold as a whole, nor the loss of value if partitioned in kind [into] separate parcels. Their declarations discussed possible listing prices to sell portions of the property if it could be subdivided, but did not provide an expert appraisal opinion on market values. Ms. Schultz is not an expert appraiser and is a personal friend of Cal Evans Jr. The court does not find her declaration credible on the issue of whether the property can be partitioned and sold as smaller units without great prejudice to the owners.

HRR takes issue with the trial court's characterization of Schultz's opinion as not credible, arguing that the trial court lacks discretion to reject undisputed evidence.

But Schultz's credibility was very much at issue. Cory objected to Schultz's declaration on the grounds that she and her husband are friends with Cal Jr. and personally utilize the services of the horse ranch. Lindsey also argued that Schultz could not be considered impartial due to her personal relationship with Cal Jr. The trial court did not abuse its discretion in agreeing with Cory and Lindsey that Schultz's friendship with Cal Jr. was a basis for deeming her opinions less credible than those of an independent, certified appraiser. The credit afforded an expert witness's declaration testimony is "quintessentially a matter for the trier of fact to determine." *Strauss v. Premera Blue Cross*, 194 Wn.2d 296, 302, 449 P.3d 640 (2019).

- 14 -

Moreover, the trial court further found Schultz's declaration unconvincing because it did not directly address the question of whether a sale and partial partition in kind would decrease the overall property value and therefore did not rebut Lindsey's evidence of great prejudice. Schultz opined that one tax parcel could be sold for $800,000 and the remaining five tax parcels had a likely combined market value of $400,000. But she did not opine on the overall value of the ranch if it were sold as a single property as Dodge proposed. In fact, Schulz did not challenge Dodge's opinion that "the highest and best use of the subject property is in its current configuration."

Nor did Schulz provide any support for her $400,000 valuation of the remainder of the property. It is possible she simply added up the tax assessed values of the remaining parcels to arrive at this valuation. But Schulz did not rebut Dodge's opinion that separating these parcels from the larger, more valuable one, would substantially impair the value of these parcels. And she did not explain if or how the property could be subdivided as she proposed or whether a boundary line adjustment would be needed to address structures that spanned tax parcel boundaries. The trial court had a reasonable basis in the record for rejecting her testimony.

Finally, Finding of Fact 9 reads:

The court finds that sale of the entire property is the most equitable outcome for all co-tenants based on the evidence presented. HRR and Cal Evans Jr. did not present sufficient or persuasive evidence for a life estate or proposed partition and sale of some of the land. Their proposals could shift the risk of lower market value and sale costs to other co-tenants and defendant HRR has not presented sufficient evidence that it would be fair and equitable to all owners. The partition remedies proposed by defendant HRR would cause great prejudice to the co-tenants.

We have scoured the record to determine what partition remedies, as referenced in this finding, HRR actually proposed. Initially, HRR asked the court to cleave off a life estate and deed that interest to Cal Jr., despite the fact that he is not an owner of this property. The record supports the trial court's decision to reject this proposal because it would have required Lindsey and Cal III to remain owners of property against their will without any right to use or sell that property until Cal Jr. passed away. And it is not a remedy HRR even advances on appeal.

On December 9, 2020, HRR changed tactics and informed the court that, rather than seeking a life estate for Cal Jr., Cal Jr. was "willing to vacate the house and let it be sold with its ten acres. That would net enough money to pay Lindsey her share and allow me to have the remainder of the property to continue as a horse ranch." This is the only proposed remedy HRR presented before the court determined that a partition in kind was not feasible.

But the proposal conflicted with Dodge's expert opinion that keeping the property with the residence together with the horse training and boarding facilities and acreage was its "highest and best use." Dodge testified that the residence and barn "constitute most of the market value, and the surrounding pasture lands would have little value unless sold with the horse training and boarding facility." And the sole source of support for the feasibility of this proposal was the discredited Schultz declaration.

Moreover, as we understand this proposal, if HRR received a deed to the remaining 20 acres, with no sale costs associated with such a transfer, the three owners would have to share the cost of selling the largest parcel with the

- 16 -

residence. And, as the court found, this proposal would create a risk that the market value of the 10-acre parcel alone might be less than the owners would realize from a sale of the entire ranch. The trial court's rejection of this alternative is supported by the record.

Finally, in November 2021, HRR raised yet a third alternative:

> [P]laintiff and her co-owner Calvin Evans III could receive the 10-acre property in a partition in kind, and that valuable property would be more than enough to cover their expected shares ($800,000 is enough to cover their total 50% share each of $575,000, or $287,500 each, before accounting for their proportionate shares of transaction costs, taxes, etc., based on 25% of their appraiser's valuation of $1,150,000). In sum, this evidence showed that the property could be partitioned in kind without prejudice to *any* co-owners, let alone to "*all* the owners."

We can find no indication that HRR ever proposed this particular partition in kind alternative at any point prior to November 2021 when it submitted objections to Lindsey's proposed findings of fact and conclusions of law. But it, too, is premised on the Schultz testimony that the 10 acres with the house could be sold without the accompanying horse boarding facilities and pasture land.

Each proposal HRR advanced, as alternatives to a sale of the entire ranch, was unsupported by any credible evidence and was based on nothing more than speculation. All of the owners would have faced additional appraisals, potential legal battles over boundary line disputes and encroaching structures, and the lost value to the surrounding pasture land. This evidence supports Finding of Fact 9 that HRR's various proposals would cause significant pecuniary loss to all of the co-tenants.

Adequacy of Court's Conclusions of Law

HRR next argues the trial court's factual findings do not support its legal conclusion that "partition cannot be made without great prejudice to owners [HRR], Lindsey Evans Rodriguez, and Calvin Evans III." HRR first contends that the trial court erroneously shifted the burden of proof to HRR rather than leaving that burden with Lindsey. It also argues that the findings are inadequate as a matter of law because the trial court failed to determine the value of the individual tax parcels if sold separately, rather than as a unit. Finally, HRR contends the trial court failed to consider the prejudice HRR would sustain from a sale. We address each argument in turn.

1. Burden of Proof

HRR argues that the court applied the incorrect legal standard in assessing great prejudice by shifting Lindsey's burden of proof to him. We disagree.

The trial court's findings, if taken out of context, could be read as shifting the burden of proof from Lindsey to HRR. The trial court found that "Cal Evans Jr. did not present sufficient or persuasive evidence for a . . . proposed partition and sale of some of the land." But the trial court's order, when read in context, also makes clear that Lindsey had satisfied her evidentiary burden of establishing great prejudice and HRR simply failed to present persuasive evidence to rebut the credible evidence she presented.

The court found credible Lindsey's claim that a partition in kind was not feasible. It accepted Dodge's opinion that the property cannot be partitioned without a substantial loss of value. The court explicitly found that "[m]uch of the property is pasture and some of the property is in the floodway of the Skykomish

River, making partition in kind not economically feasible." The court accepted Dodge's opinion that "the highest and best use of the property is as a residence with barns and pasture in its current configuration as a whole, not partitioned to separate parcels." The court also accepted Cal Jr.'s admission that separating the property "would destroy most of the value." These findings directly relate to the correct legal standard governing a court's determination of great prejudice in a partition action: whether "the value of the partitioned parcels would be materially less than the value of the undivided property." *Overlake Farms*, 196 Wn. App. at 940.

Only after making these findings did the court evaluate HRR's alternative proposals. The court noted that at the October 2020 hearing, the only alternative HRR proposed was the sale of a life estate to Cal Jr. This alternative, the court determined, would have required all of the co-tenants to retain ownership for the duration of Cal Jr.'s life, despite the lack of any agreement to this effect: "Judge Lucas found that HRR and Cal Evans Jr. were asking 'let me have control over this ranch as a unitary functioning object for the rest of my life and delay any sort of compensation or relief to the other (owners) until my life is terminated.' " The trial court did not abuse its discretion in viewing this proposal with skepticism as it appears to contravene well-established Washington law that a co-tenant cannot be forced to retain ownership of property that the co-tenant does not wish to own.

The court recognized that only after significant delay did HRR develop a new idea—the sale of one of the six tax parcels to generate sufficient cash to allow HRR to buy out Lindsey's and Cal III's interests in the remaining five parcels. Because the argument was novel, the court evaluated the credibility of this

proposal and the evidence supporting it. It deemed the evidence, the declaration of Jennifer Schultz, to lack credibility. The court, in effect, found that Schultz lacked a valid basis for concluding that the tax parcel on which the home sat could generate sales proceeds of $800,000 or that the remaining tax parcels, if separated from the most valuable part of the ranch property, would retain the value anywhere near that suggested by Schulz.

In this context, it is clear the court found that Lindsey had met the burden of proof to demonstrate that breaking up the property and selling off one, but not all, of the parcels, would lead to an overall loss in value to the three co-owners. HRR simply did not convince the court otherwise. The trial court thus did not shift the burden of proof to HRR.

2. Valuation Methodology

HRR next contends that the trial court used an incorrect methodology for finding great prejudice to the owners. It argues that to find great prejudice, "the trial court had to make a finding on 'the value of the share of each [parcel] in case of a partition.' " HRR maintains that the court failed to compare the values of each parcel if sold separately to the value of the property if sold in its entirety and had to do so before it could find that the first value was materially less than the second. *Id.* While this methodology is certainly one possible way of gauging prejudice, we cannot agree that it is the only way to reach such a conclusion.

HRR relies on language from *Williamson* to advance this argument. In that case, our Supreme Court reviewed the "great prejudice" test as articulated by the supreme courts of several other states, and in the process, quoted a 1907 Wisconsin Supreme Court case:

> So the established test of whether a partition in kind would result in "great prejudice to the owners" is whether the value of the share of each in case of a partition would be materially less than his share of the money equivalent that could probably be obtained for the whole.

96 Wash. at 536 *(*quoting *Idema v. Comstock*, 131 Wis. 16, 110 N.W. 786 (1907)). But neither *Williamson* nor *Idema* required the methodology HRR advances as a precondition to finding great prejudice.

Indeed, we have previously affirmed findings even when they were not phrased in the exact language of the partition statute. In *Hegewald v. Neal*, 20 Wn. App. 517, 582 P.2d 529 (1978), this court affirmed a partition by sale, rather than partition in kind, based on a referee report that a partition in kind would "destroy the usefulness of the property." *Id.* at 523. The report was missing the statutory finding that a partition in kind could not be made without great prejudice to the owners. *Id.* at 522. Instead, it discussed problems created by the topography of the land, the conditions of the structures, and the value of the timber and hot springs on the land. *Id.* at 522-23.

This court held that the report, while "not phrased in the exact language of the statute," was sufficient to support the order of sale, particularly when a dissenting referee recommended a continued common ownership of the hot springs. This fact lent credence to the trial court's ultimate finding that partition in kind was not feasible. *Id.* at 523. We did not impose on the trial court the obligation of determining the value of individual portions of the property when the ultimate conclusion was that a partition was simply not feasible.

In fact, the court in *Hegewald* rejected the appellants' argument that the referees' majority report was insufficient because it failed to propose a specific plan

for a partition in kind. *Id.* at 524. "RCW 7.52.130 permits the referees to report that in their opinion such a partition is not feasible even though they are under a primary duty to partition in kind *if they can*." *Id.* (emphasis added). It clearly held that "[n]o standards for factual content are fixed by statute." *Id.* at 525.

By analogy, RCW 7.52.080 similarly permits a trial court to find that partition in kind is not feasible, even when there is a presumption for partition in kind. There is no requirement in the statute that the trial court first assign a monetary value to partitioned property before finding great prejudice. Indeed, the mere fact that partition in kind is not economically feasible, as the trial court found here, suggests it would be impossible to speculate on a possible valuation for portions of a piece of property that cannot be divided. The trial court was free to reject the formulistic approach HRR advances on appeal when there was no evidence of an economically feasible way to divide this property in kind.

### 3. Prejudice to HRR

HRR finally argues that the trial court's findings are inadequate to support its great prejudice conclusion because the court failed to explain how a partition in kind would prejudice HRR.

A court ordering partition by sale must find that a partition in kind would greatly prejudice all of the owners, not just the minority owners, like Lindsey and Cal III. *Overlake Farms*, 196 Wn. App. at 942-43. But here the trial court found that a partition in kind is not economically feasible and would destroy the value of the parcels. A court order requiring owners to divide something they cannot economically divide would clearly prejudice all three owners.

HRR also argues that a partition by sale will cause it extreme prejudice but will not prejudice either Lindsey or Cal III. While we understand that a sale requires Cal Jr. to vacate the ranch on which he has resided and operated his business for years, the test is not whether partition by sale will cause great prejudice to the owners, but whether partition in kind will do so. Neither HRR nor Cal Jr. has an absolute right to retain ownership to this property or to force Lindsey or Cal III to remain owners of land.

The trial court applied the correct legal standard, did not shift the burden of proof to HRR and did not err in its evaluation of great prejudice. Its findings of fact are supported by substantial evidence and those findings support its legal conclusions.

Affirmed.

_Andrus, C.J._

WE CONCUR:

_Smith, A.C.J._